Christian, J.,
delivered the opinion of the court.
This is a writ of error to a judgment of the hustings court of the city of Richmond. The plaintiff in error was convicted in said coui’t of an assault with intent to kill his wife, Mary Baccigalupo, and that said assault was made feloniously and maliciously.
The murderous assault was distinctly proved. It was proved, that on the night of the 15th March, 1879, the prisoner, while walking with his wife on a narrow and unfrequented street on the bank of the canal basin, made a sudden assault upon her and inflicted upon her person nine wounds with a knife, and attempted to throw her in the canal.
*809 The jury found him guilty of this offence, and fixed the term of his imprisonment in the penitentiary at eight years; and thereupon the said court entered a judgment in accordance with said verdict. To this judgment a writ of error was awarded by one of the judges of this court.
In the petition three grounds of error are assigned, to-wit:
1. That the court erred in overruling the motion to •quash the writ of venire facias.
2. That the court erred in overruling his motion in arrest of judgment.
3. That the court erred in overruling his motion for a new trial—first, upon the ground that the verdict was ■contrary to the law and the evidence; and second, upon the ground of newly-discovered evidence.
As to the first assignment of error, it is sufficient to refer to the case of Poindexter v. The Commonwealth, supra 766, in which the president of this court has elaborately considered the same question raised by the first bill of exceptions in this case, in which I entirely concur. I will only add the single remark, that the policy of the law, as shown by repeated acts of the legislature, was plainly to declare that a jury should be obtained from a place remote from the scene of the act charged to have been committed. And certainly it is no error, after the panel of jurors has been exhausted, and when it becomes necessary for the judge to obtain additional jurors, to direct the sheriff to summon the same in accordance with the requirements of the original venire facias, to-w7it, jurors residing remote from the place where the offence is alleged to have been committed. Certainly, the prisoner cannot complain if the judge has furnished a list of jurors whose residence is that prescribed by law in the original venire facias.
*810 I am therefore of opinion that the said hustings court dM n°f err in refusing to quash the said venire facias after the panel of jurors was exhausted under venire facias.
I am further of opinion, that the said hustings court did not err in overruling the motion in arrest of judgment. This motion is founded upon the ground that the indictment did not aver the place where the said offence was charged to have been committed. The indictment does in express terms aver that the offence was committed “at the said city of Richmond and within the jurisdiction of the said hustings court of the city of Richmond.”
This is a sufficient averment and is in accordance with both the statute and common law. It is not necessary that the indictment should charge the particular locality in a county or city, but it is always sufficient if charged to have been committed within such county or corporation, or within the jurisdiction of the court having cognizance of the offence. This precise point was decided in a recent case, in which Judge Burks delivered the opinion of the court, and not yet reported. I am therefore of opinion that the court did not err in overruling the motion in arrest of judgment upon the ground set forth in the prisoner’s second assignment of error.
The third assignment of error is based upon the prisoner’s third bill of exceptions, to the judgment of the said hustings court overruling his motion for a new trial: First. Upon the ground that the verdict was contrary to the evidence; and second. Upon the ground of after-discovered evidence. Upon the first branch of this bill of exceptions, to-wit: that the verdict is contrary to the evidence, it is first to be observed that the facts are not certified, but we have before us a certificate of the evidence only.
*811 The defence intended to be raised by this evidence manifestly was that the prisoner was insane at the time of the offence committed.
It was undoubtedly competent under the plea of not guilty for the prisoner’s counsel to show that at the time of the commission of the offence he was laboring under such aberration of mind, or insanity, as to make him morally irresponsible for the act with which he stood charged.
This could be done without the formal plea of insanity, and without calling a jury specially to pass upon the issue of insanity. It was sufficient if under the plea of not guilty it could be shown that the prisoner was not legally or morally guilty of the act charged against him. If it could be shown that at the time of the commission of the offence charged, the prisoner was in that condition of mind which made him morally irresponsible for his acts, this fact could be as well shown under the plea of not guilty as upon a formal issue made before a special jury to try the question of insanity.
The rules governing an appellate court in passing upon the question of new trials upon the ground that the verdict is contrary to the evidence are now too well settled to admit of any doubt or discussion or to require any extended citation of authority.
In a case like the present where the evidence is certified, and not the facts proved, it is well established by repeated decisions of this court that the appellate court will not reverse the judgment, unless after rejecting all the parol evidence of the exceptor, and giving full faith and credit to the evidence of the Commonwealth, the decision of the court below shall appear to be wrong. See Read v. The Commonwealth, 22 Gratt. 924, and cases there cited. See also Blosser v. Harshberger, 21 Gratt. 214, where the rules on the subject of new trials are specifically stated.
*812 Indeed the learned counsel for the prisoner admit that ffie evidence upon the question of insanity was and do not lay much stress either in their petition, or in the argument at the bar, upon this ground of error. But the stress of their argument is laid upon that part of the bill of exceptions aforesaid, which declares as ground of error, the refusal of the court to set aside the verdict because of after-discovered testimony. And this in fact, presents the most important question we have to consider in this case.
After the conviction of the prisoner an affidavit was filed by one of his counsel, John S. Wise, Esq., in the following words:
“ That John B. Young, Henry W. Hobson, and he, were counsel for Angelo Baecigalupo, upon trial of Baccigalupo, for felony in the hustings court of the city of Richmond; that both he and other counsel had great difficulty in procuring testimony for .the prisoner ; that nothing could be gotten from the prisoner to enable them to make an efficient defence; that he talked wildly and unintelligibly about his case; and that all testimony that they obtained, relative to his mental condition, was through accident and the kind offices of friends.
“ That not until near the end of the trial did any of the counsel have any intimation of the testimony set forth in the Lynchburg affidavits filed herewith, and it was impossible to obtain such¿ prior to the prisoner’s conviction.
“ That the testimony of Coleman, as set forth in his affidavit, did not in any way come to the knowledge of counsel until after the conviction of the prisoner.
“ That he and the other counsel have used all possible diligence and care in procuring all possible testimony in the defence of prisoner.
*813 “ That they never had intimation, prior to the end of the trial, of the visit of Baccigalupo to Lynchburg.
“That the evidence of the Lynchburg Baccigalupo’s visit to Lynchburg, and conduct there, was obtained by accident through O. C. Salamone, who learned it, pending the last trial, in a business letter, which is hereto attached; which letter was produced by the said O. O. Salamone, written in the Italian language, and which has been translated into the English language by John A. Pizzini, vice-consul for Italy; and is in the words and figures following, to-wit:
“ Lynchburg, March 18th, 1879.
“Dear Friend Pasquine:
“In looking over the papers this morning, there appeared before my eyes the terrible tragedy which occurred in Richmond Saturday night, between Angelo Baccigalupo and his wife. The affair has filled me with horror, and I am anxious to know how he ever came to marry his cousin, inasmuch as it had seemed to me of late that he had lost his brain for, or become infatuated with another widow, which fact is perhaps known to you. I can now confess to you that Angelo was here about two months ago, and at that time his appearance seemed to be more adapted for the habitation of a maniac, while his conversation was anything but that of a rational person. In short I, as well as others, believed absolutely that he had lost his mind. Let me know all the particulars in regard to the above, and then I will write you again.
“I salute you, and am, most affectionately,
“Yours,
“Z. Triaca.
“P. S. My address is P. O. Box 161, Lynchburg.
*814 “ That he further believes the prisoner to be in such mental condition as to have incapacitated him from or assisting in his own defence, and that the lak°rs °f counsel have been earnest and unremitting, notwithstanding the entire want of co-operation on the part of the prisoner.
“Jno. S. Wise.
“ Subscribed and sworn to before me, in open court, this 28th day of April, 1879.
“Andrew Jinkins,
“ CVk Richmond hustings court.”
This affidavit of the counsel was accompanied by affidavits of three parties (Italians) residing in the city of Lynchburg, and also of one witness residing in the city of Lichmond, all of whom expressed their opinions very strongly as to the insanity of the prisoner, and give accounts of certain conduct and acts on the part of the prisoner upon which they base their opinions; and these acts and conduct are set forth with much detail in the affidavits filed. Without setting forth specifically the facts and opinions to which these witnesses would have testified if they had been called before the jury, it is sufficient to say that such evidence would have been merely cumulative and corroborative of that evidence which had been already heard by the jury upon the trial.
The rules governing new trials on the ground of after-discovered testimony have been repeatedly declared by this court, and may be briefly stated as follows :
To authorize the granting a new trial on the ground of after-discovered evidence, four things are necessary: 1st. The evidence must have been discovered since the former trial. 2d. It must be such, as reasonable diligence on the part of the party asking it could not have *815 secured at the former trial. 3d. It must be material in its object and not merely cumulative and corroborative or collateral. 4th. It must be such as ought produce on another trial an opposite result on the merits. See Read’s case, 22 Gratt. 924, and cases there cited. Also Tompson’s case, 8 Gratt. 637; 3 Whart. Am. Cr. Law, § 3161; and St. John’s ex’or v. Alderson, recently decided by this court, 32 Gratt. 140.
While the first two requisites laid down by these authorities have been fulfilled, the two latter are plainly wanting in this case. The evidence contained in the affidavits presented by the prisoner’s counsel upon his motion aforesaid are merely cumulative and corroborative and are not such as would probably produce a different result.
It must be admitted that the record contains much evidence both as to the acts of the accused and the opinions of witnesses tending to prove the prisoner’s insanity. The affidavits presented simply contain the opinions of other witnesses and facts of a similar character to those already testified to, tending to establish the prisoner’s insanity. They are all simply cumulative and corroborative.
Hor do we think that such evidence, if it had been heard by the jury, would have produced a different result. A jury who had heard the decided opinions of distinguished physicians given upon the subject of the prisoner’s insanity, could hardly have been influenced by the acts of the prisoner in a bar-room in the city of Lynchburg, when he might have been under the influence of strong drink, or by the opinions of such witnesses based upon his conduct upon a single occasion under the circumstances narrated by them in their affidavits.
We are therefore constrained to declare, upon the record before us, that the evidence contained in the *816 affidavits produced was merely cumulative and not calculated to produce a different result if it had been on the trial. We are therefore of opinion that Up011 the well-established rules of law in such cases, x 7 the said hustings court did not err in overruling the prisoner’s motion for a new trial upon the ground of after-discovered evidence.
It is proper to say that the court has not been entirely free from difficulty in coming to its conclusion in this case and have given it the most anxious consideration. While there has been much evidence tending to prove the prisoner’s insanity, it is certainly not of so conclusive a character as to induce this court in violation of its established rules on the subject of new trials, to set aside the verdict of the jury, approved by the judge presiding at the trial. The question whether the prisoner was insane at the time of the commission of the offence charged, was a question of fact for the jury who heard and saw the witnesses, who had before them, for days, the prisoner, and who concluded upon the whole evidence that he was not insane; and when that verdict is approved by the judge who presided at the trial, this court, whatever doubts it may have upon the evidence as presented in the record, would not be justified in setting aside such verdict.
We cannot say that this record presents such a case. Even the medical testimony is contradictory and conflicting as to the insanity of the prisoner. And in considering the evidence contained in the affidavits respecting the newly discovered testimony, relied upon, it is a pregnant and noteworthy fact to be considered that the evidence produced is that of witnesses living in a distant city, who saw the accused on a single occasion in a bar room, while the record shows that the pi’isoner had been for many years a resident of the city of Richmond where he had been engaged in a prospei' *817 ous business, in which he had accumulated a considerable amount of money, and yet up to the time of the commission of this offence, no one except one or two persons had ever advanced or expressed the opinion that he was insane. If such was really the fact, it would seem that it ought to have been established by persons living in the city of his residence, and not by strangers living in a distant city, who saw him but on a single occasion under the circumstances before referred to. The affidavit of only one person residing in the city of Biclimond is produced as after-discovered evidence, and that does not materially supplement the evidence already heard by the jury.
In defence to a criminal prosecution upon the ground of insanity, it is not sufficient that the evidence should be of such a character only, as to produce a doubt on the minds of the jury, but the onus probandi is always on the accused to prove such insanity to their satisfaction.
In Boswell’s case, 20 Gratt. 860, one of the grounds of error assigned, was that the court in that case gave to the jury the following instruction, to-wit: “That every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes until the contrary is proved to the satisfaction of the jury.” In commenting upon this instruction, the president of this court said, “ I think this instruction is unexceptionable. *****,* He (the counsel for the accused) seems to think that all the proof required by law to repel the said presumption was only so much as would raise a rational doubt of his sanity at the time of committing the act charged against him. How I think this is not law; and that the law is correctly expounded in the instruction given by the court. There are certainly several American cases which seem to sustain the view of the prisoner’s *818 counsel. But I think the decided weight of authority, English and American, is the other way. In 1 "Whart. Cr. Law, § 711, the writer says: “At common ^aw PrePonderance of authority is that if the defence be insanity, it must be substantially proved as an independent fact.” And for this proposition, a number of cases are cited. And after reference to many of them, he concludes as follows: “I think the fair result of them all is to show that insanity when it is relied on as a defence to a charge of crime must be ■proved to the satisfaction of the jury, to entitle the accused to be acquitted on that ground. * * * * The law presumes every person sane till the contrary is proved. The commonwealth having proved the corpus delicti, and that the act was done by the accused, has made out her case. If he relies on the defence of insanity, he must prove it to the satisfaction of the jury. If upon the whole evidence they believed he ■was insane when he committed the act they will acquit him on that ground; but not upon any fanciful ground that though they believe he was then sane, yet, as there may be a rational doubt of such sanity, he is therefore entitled to an acquittal. Insanity is easily feigned, and hard to be disproved, and public safety requires that it should not be established by less than satisfactory evidence.”
These principles so clearly declared by the unanimous voice of this court speaking through its president in Boswell’s case, we think apply with full force and very aptly to the case at bar; and upon the whole we are of opinion that there is no error in the judgment of the said hustings court of the city of Richmond, and that the same must be affirmed.
Judgment affirmed.