STATE v. L. G. HANCOCK.

(Filed 18 November, 1909.)

1. Verdict Set Aside—Discretion—Appeal and Error.

The refusal of the trial judge to set aside a verdict as being against the weight of the evidence is discretionary with him and not reviewable on appeal.

2. Insanity—Burden of Proof—Verdict—Recommendation for Mercy —Some Doubt—Proof Required.

Upon the trial of a criminal offense in which the plea of intermittent insanity at the time charged is set up as a defense, a verdict rendered that, "we return a verdict of guilty; we ask the mercy of the court for the reason that some of the jurors have some doubt as to the sanity of the defendant," is sufficient for conviction, the first sentence being a complete verdict, and the balance surplusage, merely recommendatory, showing that some doubt existed in the minds of some of the jurors, but not sufficient to overcome the requirement that the burden was on defendant to prove insanity to their satisfaction.

APPEAL by defendant from *Moore, J.,* February Term, 1908, of GUILFORD.

The facts are stated in the opinion.

*Manly & Hendren* and *E. E. Gray,* with *Attorney-General,* for the State.

*Watson, Buxton & Watson,* for defendant.

CLARK, C. J. The defendant, a trusted employee, as manager at Winston of a branch business, whose main office was at Memphis, Tenn., embezzled something over $3,100. He fled with some $2,500 of this and $100 of jewelry which he had bought with his employer's money, and was arrested in San Francisco with $1,400 of the money on his person, unspent.

The record presents only two assignments of error.

1. "Because the verdict was against the weight of the evidence." This is a matter in the discretion of the trial judge. *Bird v. Bradburn,* 131 N. C., 488; *State v. Rose,* 129 N. C., 577; *Edwards v. Phifer,* 120 N. C., 406.

2. Because of the form of the verdict. The verdict of the jury as recorded is: "We return a verdict of guilty. We ask the mercy of the court, for the reason that some of the jurors have some doubt as to the sanity of the defendant."

The first sentence is the verdict in this case. It is complete: "We return a verdict of guilty." The next sentence is a request to the court and is no part of the verdict.

In *State v. McKay,* 150 N. C., 813, the jurors had rendered a verdict of "guilty of murder in the first degree, with mercy." They were then directed by the court to find a verdict of "guilty" or "not guilty," whereupon they returned a verdict of "guilty." In writing the opinion of the Court, *Brown, J.,* said: "We do not think the added words 'with mercy,' vitiated the verdict, had it been so received. These words simply amounted to a recommendation for mercy, and did not leave in doubt the grade of the verdict rendered. They were surplusage and no part of the verdict."

"A statement of the grounds of the verdict or a recommendation to mercy may be disregarded as surplusage." Abbott Cr. Trial Brief, 727, and cases cited. His Honor charged the jury that "if from the evidence they found that, just prior to the alleged acts of the embezzlement by the defendant, the defendant had a diseased mind, and such a disease was a permanent one, then the court charges you that the burden is upon the State to satisfy you beyond a reasonable doubt that at the time the defendant embezzled the money charged, if you find he did embezzle it, the defendant was sane—that is, he knew right from wrong and the nature and consequences of his acts; and if you are not so satisfied, you should acquit; but, if you should find from

the evidence that the defendant, at the time aforesaid, did have a diseased mind, but that the character of the disease was such that the defendant had lucid intervals; that if you find he was sane at times, and at times insane, then the court charges you that the burden is upon the defendant to satisfy you, not beyond a reasonable doubt, but to satisfy you that at the time he took the money and committed the alleged acts of embezzlement, as charged in the bill of indictment; if you find he did take said money and was guilty of embezzlement, that he was at the time of said act of embezzlement insane—that is, that he did not have sufficient mental capacity to know right from wrong and the consequences of the acts and deeds he was committing—and if he has not so satisfied you, you should convict the defendant of this charge." The defendant excepted.

Taking the first part of this charge as correct, if the jury found the defendant permanently insane, they found him sane at the time of the commmission of the act, beyond a reasonable doubt, but said that "some of the jury have *some* doubt of the sanity of the prisoner," clearly not amounting to "a reasonable doubt," as we must presume that the jury followed the charge of the court. Indeed, the defendant only sought to prove "intermittent insanity with lucid intervals," and the court correctly charged that the burden was on the defendant to show, not beyond a reasonable doubt, but to the satisfaction of the jury, that the embezzlement was accomplished while the defendant was insane, and the language of the jury evinces that it was not so satisfied.

But the first part of the charge was erroneous as regards the State. By the uniform rulings in this State, the burden of proving insanity in a criminal case is on the defendant who sets it up. *State v. Norwood,* 115 N. C., 793; *State v. Potts,* 100 N. C., 457; *State v. Payne,* 86 N. C., 610; *State v. Vann,* 82 N. C., 637; *State v. Starling,* 51 N. C., 366, and there are many others in our Reports. This is sustained by the great weight of authority elsewhere, though there are some States which hold a different doctrine. In *State v. Clark,* 101 Am. St., 1012, the jurisdictions maintaining the differing doctrines are marshalled, as is also done more exhaustively as well as more interestingly by *Hawley, C. J.,* in *State v. Lewis,* 20 Nev., 333.

Nowhere is the principle more clearly stated than in *Bacciga-lupo's case,* 74 Va., 817, as follows: "In defense to a criminal prosecution upon the ground of insanity, it is not sufficient that the evidence should be of such a character only as to produce a doubt in the minds of the jury, but the *onus probandi* is always

on the accused to prove such insanity to their satisfaction." This the defendant did not do. It was not suggested that he was not perfectly sane at the trial. The evidence showed him an active, capable business man; that 2 October he began using his employer's money; that on 19 October he drew out about $2,500, alleging that his employers would use it in building. To divert suspicion, he stated he was going to Danville, Va., and would return in two days. Thus getting a start of two days, he took an automobile to catch the northbound train at Greensboro for Washington, D. C.; at the latter place he bought a through ticket, under an assumed name, and by the quickest route, to Nagasaki, Japan; at Honolulu he doubled back (doubtless fearing extradition), and was arrested in San Francisco, still using the assumed name, which also was marked on his trunk, valise, handbag and on the band inside his hat. The day he left he wrote a letter to the main office, at Memphis, which the experts on both sides testified was written by a man who was at that time of a sound mind. There was evidence—never difficult to get—of some experts, selected and summoned by the defendant, throwing doubt upon the defendant's sanity at times, there being evidence of some wild statements at times made by the defendant; but, as there was evidence that he was a drinking man, the jury may have thought this sufficiently accounted for.

At any rate, the burden was on the defendant to show to the satisfaction of the jury that he was insane at the time of the commission of the offense. All that he did was to raise some doubt in the minds of some of the jury, who, nevertheless, found him guilty. The plea of insanity was not proven to their satisfaction. Else, under the charge of the court, they must have acquitted the defendant.

No error.