STATE v. J. A. TERRY.

(Filed 25 April, 1917.)

1. **Venire—Another County—Court's Discretion—Appeal and Error.**

   The refusal of a motion to summon a venire from another county for the trial of a capital felony is within the sound discretion of the trial judge, and not reviewable by the Supreme Court on appeal.

2. **Trials—Impartiality—Homicide—Witnesses.**

   Where the plea of insanity as a defense in the trial of a capital felony is made and relied on, objection to the fairness or impartiality of the trial, that the solicitor had subpœnaed and had not examined as a witness a specialist in mental diseases, cannot be sustained on appeal.

3. **Appeal and Error—Trials—Attorney and Client—Improper Remarks—Exceptions.**

   Where on appeal exception is taken to improper remarks made by counsel in their argument to the jury, it must be made to appear by the record that the alleged remarks had been made; and then considered on appeal only when such had been promptly called to the attention of the trial judge, and exception made to his refusal to correct them.

4. **Jurors—Qualifications—Court's Discretion—Homicide—Appeal and Error.**

   Where jurors in the trial of a capital felony had largely read the newspaper accounts of the killing, admit forming an opinion of the prisoner's guilt, one of them stating that unless the prisoner proved he was innocent he would render a verdict of guilty; and upon examination by the counsel and judge the witness stated he could eliminate all he had heard, be governed by the evidence, and give the State and the prisoner an absolutely fair trial, and the prisoner having exhausted all his peremptory challenges, the jurors were permitted to serve: *Held,* the matter was within the reasonable discretion of the trial judge, and not reviewable.

5. **Homicide—Murder—Insanity—Instructions—Burden of Proof.**

   Where the evidence in the trial of a capital felony tends strongly to prove a willful, deliberate, and premeditated killing, with evidence tending to show insanity on the part of the prisoner at the time, and the judge has correctly charged the jury as to what in law constitutes the offense of murder in the first degree, it is proper for him to submit to them the finding of fact as to insanity, putting the burden thereof on the defendant to establish this as a fact by the preponderance of the evidence.

**6. Homicide—Murder—Insanity—"Moral Insanity"—Impulse.**

The degree of insanity required for an acquittal of a charge of murder is the lack of mental ability of the accused to be conscious of the wrong at the time he committed the homicide, or his inability to know whether the consequences of his act were right or wrong; and it does not include "moral insanity" or a supposed uncontrollable impulse to commit the act notwithstanding.

INDICTMENT for murder, tried at September Term, of GUILFORD, before *Webb, J.*

The prisoner was convicted of murder in first degree, and from the judgment sentencing him to death, appeals.

*Attorney-General Manning, Assistant Attorney-General Sykes for the State.*

*S. Clay Williams, Oscar L. Sapp, Jerome· & Jerome for prisoner.*

BROWN, J. In apt time, after rendition of the verdict, the prisoner filed a written motion for a new trial, "for that he has not had a fair and impartial trial and such as is guaranteed to him by the laws of the land":

1. Because the special venire from which the jurors were chosen to try the prisoner should have been summoned from some other county than the county of Guilford.

We fail to find in the record any motion by prisoner to summon a venire from· an adjoining county. Had such motion been made and denied, it could not be reviewed by us, as it is a matter within the sound discretion of the judge of the Superior Court. ·

2. Because the State had under subpœna and in attendance Dr. Mc-Campbell, an acknowledged expert in diseases of the mind, and failed to offer him as a witness.

The State solicitor had the right to select his witnesses and use such only as he thought best. There is no law that compels the solicitor to place all of the State's witnesses on the witness stand. If the prisoner desired the testimony of Dr. McCampbell, he should have called and examined him.

3. Because one of the attorneys for State, in concluding the argument, was permitted to make improper and prejudicial remarks to the jury.

There is nothing in the record to substantiate such statement, no finding in the case on appeal that such improper remarks were made, and no exception taken to them at the trial. Had such remarks been made, i+ was the duty of the prisoner's counsel to call the attention of the court to them in order that the judge may correct them. For failure to do so, an exception should have been taken.

4. Because the prisoner was required to assume the burden of proof as to his insanity.

This will be considered later in the course of this opinion.

There are numerous assignments of error, all of which relate to three subjects, viz.: the composition of the jury; the charge of the court, and to the burden of proof.

The prisoner excepted to the ruling of the court declaring that three jurors were duly qualified. The peremptory challenges of the prisoner were exhausted and the challenged jurors could not be stood aside. Upon a very exhaustive examination, these jurors admitted that they had read much about the case in the local papers and had heard a great deal about it in public rumors, and, had formed an opinion that the prisoner was guilty. They further stated that they would go into the jury box under the belief that the prisoner was guilty, and that it would take evidence to remove that impression. One of the jurors stated that in his opinion the burden of proof would be on the defendant to prove his innocence, and that unless he did so, he, the juror, would return a verdict of guilty.

Upon a cross-examination as well as upon examination by the court the juror testified that he could "eliminate from his mind all that he had heard or read, and that he could go into the jury box and be governed solely by the evidence produced upon the trial and by the charge of the court, and that he could give the State and the prisoner an absolutely fair trial. Upon examinaton by the judge, the juror stated again that he could render a verdict uninfluenced by any opinion he may have formed or anything that he may have heard or read.. The court in his discretion found the said jurors to be impartial, and had them tendered and sworn.

This ruling of his Honor was in exact accord with the decisions of this Court in the very recent case of *S. v. Foster,* 172 N. C., 960, which cites with approval the case of *S. v. Banner,* 149 N. C., 519, in which the same questions were asked and like answers returned as in the case now before this Court. The decision there was that a juror having been tested according to the standard used in the present case was a competent juror, and that his admission to the jury box was in the sound discretion of the judge. *S. v. English,* 164 N. C., 498.

The prisoner excepts to the charge of the judge upon the plea of insanity and tenders several prayers for instruction in respect thereto which the court refused to give. It is unnecessary to consider these assignments of error *seriatim.*

The prisoner is charged with the murder of one John R. Stewart on 15 of July, 1916. All the evidence tends to prove that on that day the prisoner went to the residence of the deceased armed with a pistol; at

the time the deceased and his wife were in the cow barn, milking a cow; that the deceased was sitting on a box milking a cow at the time when the prisoner approached; the prisoner said, "Hello, Mr. Stewart." The deceased turned around and said, "Hello, Terry." The prisoner leaned forward with a pistol in his hand and shot and killed the deceased. At the time the prisoner was so close to the deceased that the face of the latter was burned by the power. There is also evidence of some ill feeling upon the part of the prisoner about some money which he claimed the deceased owed him and had not paid.

It is not questioned that the evidence tends strongly to prove a willful, deliberate, and premeditated killing. The plea of insanity interposed by the prisoner is undoubtedly supported by much evidence, although strongly combated by the State. In his charge to the jury the learned judge below, upon this plea, stated the contentions and the evidence relied upon by the prisoner, as well as by the State, with great clearness, fullness, and fairness, and instructed the jury very carefully as to what constitutes insanity, and its effect when the plea is established. In his instruction the judge carefully followed the numerous and well settled decisions of this Court. He instructed the jury fully as to what constitutes murder in the first degree, and that it is necessary for the State to show from the evidence beyond a reasonable doubt that the prisoner prior to the time of the killing formed a purpose to kill the deceased, and that such design to kill was formed with deliberation and premeditation, and that in pursuance of such design the prisoner killed the deceased.

The court further instructed the jury that the terms "deliberation" and "premeditation" involved a mental process embodying a specific, definite intent to kill, and that such definite intent must have been conceived at some time before the deceased was killed.

His Honor further instructed the jury: "In this case the defendant interposes a plea of insanity, and he says by his plea that he did the killing, but the act is not one for which he can be held responsible. The court instructs you that whether or not the defendant had a mental disease is a question of fact to be determined by the jury; that it is as much a question of fact as to whether or not he had a bodily disease, if such a question was raised. The court charges you further that it is also a question of fact for the jury to determine whether the killing of the deceased by the defendant was the product of mental disease of the defendant.

· "The court instructs the jury that if you find from the evidence at the time of the killing of the deceased, the prisoner was not of sound mind, but affected with mental disease, that is, insanity, and that this unsoundness of mind or affection of insanity was of such a degree as to

create an uncontrollable impulse to do the act charged, by overriding the reason and judgment and to obliterate the sense of right and wrong as to that particular act, and deprive the prisoner of the power of choosing between them, then and in that event the prisoner would not be guilty of murder in the first degree, and the jury should so find."

The court further charged: "If the prisoner at the time he committed the homicide was in a state to comprehend his relations to other persons, the nature of the act and its criminal character, or, in other words, if he was conscious of doing wrong at the time he committed the homicide, he is responsible in law; but if, on the contrary, the prisoner was under the visitation of God, or had a diseased mind to such an extent that he could not distinguish between good and evil, and did not know what he did, or if he knew what he did, he did not know right from wrong of the consequences of his act, he is not guilty of any offense against the law, for guilt arises from the mind and wicked will."

These instructions appear to follow very closely those which are approved in S. v. Haywood, 61 N. C., 377, which have been approved in many subsequent opinions of this Court. S. v. Potts, 100 N. C., 458; S. v. Spivey, 132 N. C., 989.

S. v. English, supra, is a recent case dealing with the degree of insanity requisite for a defense upon a charge of homicide. The rule is very clearly defined and the law well stated, and it is unnecessary to do more than to refer to that and the decision cited therein.

In several prayers for instruction the prisoner requested the court to charge the jury, in substance, that although his mental condition was such that he could distinguish right from wrong and understood the wrongful character of the act which he committed, yet if he was impelled by an uncontrollable impulse which he could not resist to commit the act, he would not be guilty of murder. This doctrine of "moral insanity" is supported by authority in the courts of some of the States.

The case of S. v. Parsons, 60 American Reports, 193, is a leading case in which the whole subject is discussed and the cases reviewed. In that case the Supreme Court of Alabama holds that "One who by reason of mental disease has lost the power of will to control his actions and choose between right and wrong is not responsible to the criminal law for an act which is solely the product of such disease, although he may know right from wrong." This decision is reviewed at. length by the reporter at page 212 and a full summary given of the substance of judicial decisions. The learned commentator states his conclusion as follows: "It is a perfect defense to an accusation of crime if the accused at the time he committed the act was afflicted with a mental disease to such extent as to render him incapable of determining between right and wrong, or of perceiving the true nature and quality of the act done."

Again, "No form of moral or emotional insanity is a defense against a criminal accusation." This is a very clear statement of what we understand the law of North Carolina to have been without change since *S. v. Haywood, supra.*

This doctrine of "moral insanity" is expressly repudiated in the learned opinion of *Justice Manly* in *S. v. Brandon*, 53 N. C., 468. In that case the learned judge says: "The law does not recognize any moral power compelling one to do what he knows is wrong. 'To know the right and still the wrong pursue' proceeds from a perverse will brought about by the seductions of the evil one, to which, nevertheless, with the aids that lie within our reach, as we are taught to believe, may be resisted and overcome; otherwise, it would not seem to be consistent with the principles of justice to punish any malefactor. There are many appetites and passions which by long indulgence acquire a mastery over men more or less strong. Some persons, indeed, deem themselves incapable of exerting strength of will sufficient to arrest their rule, speak of them as irresistible, and impotently continue under their dominion; but the law is far from excusing criminal acts committed under the impulse of such passions."

This case is cited with approval in *S. v. Polts, supra,* wherein *Chief Justice Smith* says: "We have not allowed as exemption from the consequences of crime what is called 'moral insanity'; that is, an alleged uncontrollable impulse to commit an act with the mental faculties in full force to comprehend its criminality and wrong."

His Honor instructed the jury that the burden of proof upon the plea of insanity is on the defendant, not to satisfy the jury beyond a reasonable doubt, but to satisfy them that at the time he committed the offense he was insane. The prisoner excepted to this charge.

We understand it to be well settled in this and other States that in a criminal prosecution where the defense is insanity the burden of proof is always on the defendant to prove such insanity, not beyond a reasonable doubt, but to the satisfaction of the jury. *S. v. Hancock*, 151 N. C., 699; *S. v. Starling*, 51 N. C., 366; *S. v. Brandon, supra.*

Upon a review of the entire record, we find

No error.