## STATE v. RORY MATTHEWS.

(Filed 17 March, 1926.)

**1. Criminal Law—Judgments—Verdict—Punishment—Death—Statutes—Constitutional Law.**

Where death is imposed by statute under the provisions of our Constitution, Art. XI, sec. 2, there is no discretionary power vested in the trial judge, and upon a conviction the prescribed punishment follows and the sentence must be imposed accordingly. C. S., 4200.

**2. Same—Judgments—Courts—Discretion—Capital Felonies.**

Upon the conviction of a crime made punishable by death, and the jury have incorporated in their verdict a recommendation of mercy, of their own volition and without an intimation or instruction by the judge the words of recommendation are regarded as surplusage, and the judgment must be that of death in accordance with the command of the statute. C. S., 4200, 4657, 4665.

**3. Same—Instructions—Appeal and Error.**

Where in considering their verdict for a homicide involving a capital felony, the jury send the sheriff to the trial judge to inquire as to whether they can return a verdict with recommendation for mercy, and the judge sends back word they can do so, immediately followed by a verdict of murder in the first degree with the recommendation for mercy by the court, it is a clear inference that the jury or some of them, had agreed upon the instruction of the court, and that they understood that the court had the power to exercise clemency, and constitutes prejudicial error to the prisoner on trial for his life.

**4. Criminal Law—Punishment—Discretion of Court.**

The trial judge has no discretionary power over the punishment to be imposed against an offender of the criminal law, except where such is permitted or prescribed by statute in sentences carrying a punishment less than death, to be found in statutes fixing a maximum and minimum imprisonment.

**5. Criminal Law—Trials—Presence of Prisoner—Waiver.**

Upon the trial of capital felonies, the prisoner may not waive the right he has to be present at each step of the trial, in homicides in less degree he may waive this right personally, and in case of misdemeanors it may be done by his attorney representing him therein.

**6. Photographs—Evidence—Witness Explaining his Testimony.**

Upon the trial for a criminal offense, a capital or less offense, a photograph afterwards taken of the scene of the crime, when its accuracy has been properly testified to, may be used by the witness to illustrate his testimony, though it may not be received as substantive evidence.

**7. Same—Questions for Court.**

Whether a photograph has been rendered competent by a witness testifying to its accuracy is a question of fact for the court.

APPEAL by defendant from *Devin, J.,* at September Term, 1925, of HARNETT. New trial.

Indictment for murder. From judgment, reciting that "the jury had rendered a verdict, in due form, that the defendant is guilty of murder in the first degree, with recommendation of mercy," and adjudging that "said Rory Matthews shall suffer death by electrocution in the manner provided by law," defendant appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*W. P. Byrd, F. H. Taylor and Young, Best & Young for defendant.*

CONNOR, J. The indictment to which defendant, upon his arraignment entered a plea of "Not Guilty," was sufficient in form to support either of four verdicts, to wit: (1) Guilty of murder in the first degree; or (2) guilty of murder in the second degree; or (3) guilty of manslaughter; or (4) not guilty. Upon either of these verdicts, it was the duty of the court, *i. e.,* of the presiding judge, to render judgment as prescribed by the law of this State.

Upon a verdict that the defendant is guilty of murder in the first degree, the judgment prescribed by law is that the defendant suffer death (C. S., 4200), by means of electrocution (C. S., 4657-4665). These statutes were duly enacted by the General Assembly, pursuant to section 2 of Art. XI, of the Constitution of North Carolina. No discretion is vested by these statutes, or by any other law in this State, in the court, or the presiding judge, either as to what the punishment shall be upon a verdict of guilty of murder in the first degree, or as to the means by which, or the manner in which death, as the punishment prescribed by statute, shall be inflicted. The court has discretion only as to the date upon which a defendant convicted of murder in the first degree shall be put to death; if upon appeal by defendant to the Supreme Court, the judgment is affirmed, upon a finding of on error in the trial, a new date for the execution is fixed arbitrarily by the statute. Pub. Laws 1925, ch. 55, amending C. S., 4663. Neither the court nor the Governor now fixes such date.

Upon a verdict of guilty of murder in the second degree, or of guilty of manslaughter, the law prescribes that the judgment shall be that defendant be imprisoned; upon the former verdict, in the State prison, for a term not less than two nor more than thirty years, C. S., 4200; upon the latter verdict, in the county jail or State prison for a term not less than four months, nor more than twenty years, C. S., 4201. While the judge has no discretion as to the kind of punishment to be inflicted, which upon either verdict is imprisonment, a wide discretion

STATE *v.* MATTHEWS.

is vested in him as to the term of the imprisonment. The various judges of the Superior Courts of the State are further authorized and directed, in their discretion, in sentencing prisoners to the State prison, to fix a maximum and a minimum number of years for the imprisonment, thus making the sentence indeterminate, C. S., 7738. In exercising the discretion thus vested in him by law, with respect to the term of imprisonment, the judge may take into consideration all the facts and circumstances of the case which he may find from the evidence, either on the trial before the jury, or upon the motion for judgment upon the verdict. Where in his opinion the facts and circumstances justify it, he may temper justice with mercy, mindful that "mercy blesseth him that gives and him that takes"; in other cases, he may feel it his duty to render such judgment, within the law, as will impress the defendant with the vigor and strength of the law, and as will also strike terror into the hearts of evil-doers, thereby deterring them, by fear of like consequences, from the commission of a similar offense.

It is the declared policy of the people of this State, with respect to punishment for crimes, that the object of punishment being not only to satisfy justice, but also to reform offenders and thus prevent crime (Const., of N. C. Art. XI), discretion shall be vested in the courts to determine the extent of punishments to be inflicted upon persons who have been convicted of crime, to the end, not only that the punishment may fit the crime, but also that it may be adapted to the purposes of the State, in dealing with those who have violated its laws, more often because of their infirmities than because of a wicked purpose to do evil. It is therefore declared in the Constitution of the State, that only murder, arson, burglary and rape may be punished with death, if the General Assembly shall so enact. For obvious reasons, the General Assembly has not conferred upon the courts any discretion as to the judgment to be rendered upon a conviction of the crime of murder in the first degree, C. S., 4200; of arson, C. S., 4238; of burglary in the first degree, C. S., 4233; or of rape, C. S., 4204. It may be noted, however, that both the crimes of murder and of burglary, as defined at common-law, have been divided by statute into two degrees; only those who are convicted of either of these crimes, in the first degree, may be put to death.

If the verdict of the jury is "Not Guilty," upon an indictment for murder, the judgment must, of course, be that the defendant be discharged from custody. There is no provision by statute or otherwise in this State for the rendition of a verdict of guilty of any crime, with a recommendation of mercy, by the jury. Punishments for crime are prescribed by law; where the kind or amount of punishment is not fixed by statute, the discretion to be exercised is vested by law in the court or presiding judge. It is a sound, judicial discretion, "a liberty or

privilege allowed to a judge, within the confines of right and justice, but independent of narrow and unbending rules or positive law, to decide and act in accordance with what is fair, equitable and wholesome, as determined upon the peculiar circumstances of the case, and as discerned by his personal wisdom and experience, guided by the spirit, principles and analogies of the law," Black's Law Dictionary, p. 375. A jury has fully discharged its duty, and performed its function, under the law of this State, when its members have sat together, heard the evidence, and rendered their verdict accordingly. As the judge must not invade the true office and province of the jury by giving an opinion in his charge, either in a civil or criminal action, as to whether a fact is fully or sufficiently proven (C. S., 564), so the jury must be content to leave with the judge the grave responsibility imposed upon him to render a judgment, upon their verdict, according to law.

The record upon this appeal discloses that the evidence offered by both the State and the defendant was submitted to the jury under a full and correct charge by the court. This record contains the following statement: "After the jury had been out several hours, they sent a message to his Honor by the court officer to know if they could render a verdict with a recommendation of mercy. His Honor returned a verbal message in the affirmative." To this instruction, defendant excepted. He assigns same as error. Thereafter the jury returned a verdict as follows: "Guilty of murder in the first degree with recommendation of mercy." The court received this verdict as rendered; defendant moved that the verdict be set aside. This motion was denied, and defendant excepted. After judgment had been rendered upon the verdict as recorded, the court stated that the recommendation of mercy would be transmitted at the proper time to the Governor.

It should be noted that the defendant, by this assignment of error, presents his contention, not that it was error to receive the verdict as rendered by the jury, but that it was error for his Honor to instruct the jury that they might render a verdict upon the indictment in this case with a recommendation of mercy. This instruction was manifestly applicable to a verdict of guilty, only; it could not have been understood by the jury as applicable to a verdict of not guilty. The court had, in the charge to the jury, correctly instructed the jury that if they found the defendant guilty, they must say by their verdict, whether he was guilty of murder in the first degree, of murder in the second degree, or of manslaughter. There was evidence submitted to the jury from which they could have found facts, which under the instructions of the court, would have sustained either of the four verdicts permissible under the form of the indictment. Defendant admitted that he killed the deceased with a shot gun; all the evidence showed that de-

ceased, at the time he received the mortal wound, had in his hands a grubbing hoe, with which he had been at work prior to the appearance of defendant upon the scene. The relation between deceased and defendant, for some time prior to the homicide had been unfriendly. Defendant contended that he killed deceased in self-defense; the State contended that he killed him, with malice, and relied not only upon the admission that defendant killed deceased with a deadly weapon, but also upon evidence which tended to show express malice; the State further contended that there was evidence which showed not only that the homicide was murder, but that the murder was deliberate and premeditated, within the meaning of C. S., 4200, as construed repeatedly by this Court. After several hours of deliberation, upon the evidence, under the instructions of the court as to the law applicable to the facts as they might find them to be, the jury had not agreed upon a verdict. Within a short time after receiving the instruction that they could return a verdict, with a recommendation of mercy, they returned the verdict upon which the judgment was rendered. It is manifest that this verdict was rendered pursuant to the instruction of his Honor; the recommendation of mercy was not voluntary upon the part of the jury.

Where a verdict of guilty is rendered by a jury, including the words, "with recommendation of mercy," or words of similar import, there is authority in this State for holding that such words are surplusage, and that they may be disregarded; *S. v. Stewart,* 189 N. C., 340; *S. v. Snipes,* 185 N. C., 743; *S. v. Hancock,* 151 N. C., 699; *S. v. McKay,* 150 N. C., 813. These cases are recognized by us as authorities, sustaining the holding that recommendation of mercy by the jury, in certain cases, may be disregarded as surplusage. Where the words, "with recommendation of mercy," or words of similar import, included in, or forming a part of a verdict of guilty, are voluntary on the part of the jury, and are not so included in or made a part of the verdict, in consequence of an instruction to the jury, that they may return a verdict, with such recommendation, the words may be treated as surplusage, and the verdict received, and recorded, as a verdict of guilty. It is well, however, to be mindful of the words of the late *Chief Justice Hoke,* appearing in the opinion written by him, in *S. v. Murphy,* 157 N. C., 615. In this opinion, writing with wisdom gained from long experience, wide observation and deep reflection, he said: "Our trial courts should always require that juries in capital cases should definitely and expressly say of what degree of murder they convict the prisoner, and that the verdict should be recorded as rendered. In a case of this kind there should be no room for doubt or mistake."

We must hold that it is error for the court to instruct the jury, either in the general charge, or in response to an inquiry made by

the jury that they may return a verdict with recommendation of mercy, or with other words having reference, necessarily, to the judgment to be rendered by the court, and that where under the law there is no discretion vested in the court, as to the kind or amount of punishment which may be imposed, by the judgment, upon the defendant, the error is prejudicial to defendant. If the jury returns a verdict voluntarily, including the words "with recommendation of mercy," or words of similar import, these words may be disregarded as surplusage, if it clearly and definitely appears that the jury, upon a consideration of all the evidence, and under the instructions of the court has agreed upon the verdict as returned by them.

The identical question presented by this appeal was considered by the Supreme Court of Colorado in *Hackett v. People,* 8 Pac., 574. The question was there presented as follows: "The jury, after deliberating for a considerable length of time, and being brought into court at their own request, propounded the following question, 'Can the jury endorse on the verdict a recommendation of mercy?' To which question, the court answered by a written instruction that they could endorse such recommendation upon their verdict should they desire so to do. Thereupon they retired and soon after returned a verdict of guilty in manner and form as charged in the indictment. They also embraced in such verdict the following: 'We, the jury, recommend the defendant to the mercy of the court.'" In the opinion of the Court it is said: "Thus it appears that some of the jurors were opposed to a conviction for the grade of crime finally found in their verdict, and that they only consented thereto upon condition that the recommendation for mercy be incorporated. They must have been led to suppose, from the court's answer to their question, that this might have weight in mitigating the severity of the sentence to be pronounced. Any other explanation of the proceedings would be absurd; and it must be assumed that without such belief the verdict as returned would not have been agreed upon. Yet as the law then stood, the court was powerless to heed their suggestion. Upon a verdict in this form, it was his duty to pronounce a sentence of imprisonment for life. The law fixed the penalty, and he could not subtract a single day. He must either set the verdict aside, and order a new trial, or enter the judgment fixed by the statute. The instruction mentioned was therefore misleading, and under the circumstances a fatal error." See, also, *Territory v. Griego* (N. M.), 42 Pac., 80, citing with approval *Randolph v. Lampkin* (Ky.), 14 S. W., 538; *People v. Harris* (Mich.), 43 N. W., 1060; *McBean v. State* (Wis.), 53 N. W., 497. See, also, 16 C. J., 1026, sec. 2459; 30 C. J., 432, sec. 682.

We have not overlooked the fact that it appears from the record that the communication between his Honor and the jury was by means of messages conveyed by the court officer. Defendant does not rely upon this as error, but we would not be understood as approving this method of instructing a jury, especially in a case where a verdict may be rendered requiring under the law capital punishment. Where the life or death of a defendant is involved in the issue to be determined by a jury, he has a right to be present, in person, and with his counsel, whenever any evidence is submitted or any instruction is given to the jury relative to the issue. This right he cannot waive, *S. v. Dry,* 152 N. C., 813. The late *Chief Justice Clark,* writing the opinion for the Court, in that case says: "In every criminal prosecution it is the right of the accused to be present throughout the trial. In misdemeanors, this right can be waived by the defendant with the consent of the court, through his counsel. In felonies other than capital, the right to be present can be waived only by the party himself, *S. v. Jenkins,* 84 N. C., 813: In capital trials, this right cannot be waived by the prisoner, but it is the duty of the court to see that he is actually present at each and every step taken in the progress of the trial; *S. v. Paylor,* 89 N. C., 539; Wharton Cr. Pl. & Pr. (9 ed.), sec. 540 *et seq.;* 1 Bishop New Cr. Proc., sec. 271 (2), 273." *S. v. Hartsfield,* 188 N. C., 357.

While not necessary to the disposition of this appeal, we deem it proper to consider defendant's assignments of error, based upon his exceptions to the overruling by the court of his objections, (1) to the use of certain photographs by witnesses for the State for the purpose of illustrating their testimony, describing the place where the homicide occurred, and the relative positions of deceased, of defendant, and of witnesses immediately before and at the time of the shooting, and (2) to the introduction of these photographs as evidence.

There was evidence that these photographs were made sometime after the homicide—at least a week; they were made under the direction of a witness for the State, who testified that he was present when defendant shot and killed deceased. Just before deceased was shot by defendant, he was at work, with six men in his employment and under his supervision, constructing a new road; there was an old road, which crossed the creek, and ran straight for about thirty-five yards, then turning to the right; the new road began at the point where the old road turned to the right, and then ran to the left, up a hill; deceased was at work on an embankment, on the left side of the new road, thus being on the far side of said road from the old road; deceased had a grubbing hoe with which he was leveling the dirt hauled by the men to make a fill in the road, when defendant, accompanied by his nephew, appeared on the old road, with a shot gun in his hands; defendant spoke to one of

the men hauling dirt to the fill, telling him where to put the dirt; deceased from the embankment, where he was then at work, saw defendant and said, "Rory, this isn't costing you a cent; I am paying for this work with my own money; go on off from here." He waved his hand and started down from the embankment, with the hoe in his hands, toward the fill; he went toward the center of the road, and stopped; defendant backed several steps and said, "Don't you come down here; I'll shoot you." Deceased was standing not quite in the center of the new road; defendant was in the old road, at a distance of about nine steps, when he "pulled up" his gun, aimed at deceased, and fired; deceased took a few steps and fell dead; defendant walked away, rapidly.

At the time the photograph was made, a witness for the State pointed out to the photographer the position of deceased when he was shot, the position in which he was holding the hoe, the position of defendant at the time he fired the gun, the position in which he held the gun; the positions at which witnesses for the State were standing; also, the position of deceased when he was raking dirt down from the embankment. He placed different persons in these positions, directing the person who represented deceased how to hold the hoe, and the person who represented defendant how to hold the gun. He thus undertook to reconstruct the scene of the homicide at the time of the shooting. The photograph shows correctly the different persons standing in the positions in which they were placed by the witness at the time the photograph was taken, and in which he testified the persons whom they represented were placed at the time of the homicide.

Defendant contends that it was error to permit witnesses to use this photograph to illustrate their testimony or to permit the introduction of the photograph as evidence. Neither defendant nor his counsel were present when the photograph was made.

This Court has held that a photograph correctly representing the premises where the homicide occurred may be used by a witness for the State for the purpose of explaining his testimony; *S. v. Mitchem,* 188 N. C., 608. There must be evidence as to the correctness of the photograph before it can be used for this purpose; *S. v. Jones,* 175 N. C., 709 and cases there cited. *Hampton v. R. R.,* 120 N. C., 534. See, also, 22 C. J., 913; 10 R. C. L., 1153 *et seq.*

Whether or not there is sufficient evidence of the correctness of a photograph to render it competent to be used by a witness for the purpose of illustrating or explaining his testimony is a preliminary question of fact for the judge. In *Davis v. R. R.,* 136 N. C., 116, *Chief Justice Clark,* who wrote the dissenting opinion in *Hampton v. R. R., supra,* says: "Photographs frequently convey information to the jury and to the court with an accuracy not permissible to spoken words, if their

STATE *v.* MATTHEWS.

admission is properly guarded by inquiry as to the time and manner when taken. The admission of this species of evidence was, it is true, somewhat questioned (by a divided Court) when presented to this Court for the first time. But they have since become a well-recognized means of evidence." In *Martin v. Knight,* 147 N. C., 564, it is said in the opinion of the Court, written by *Connor, J.,* "In *Hampton v. R. R.,* 120 N. C., 534, 35 L. R. A., 808, a photograph was rejected, but in *Davis v. R. R.,* 136 N. C., 116, we followed the dissenting opinion of the present *Chief Justice (Clark),* sustained by the overwhelming weight of authority." See *Pickett v. R. R.,* 153 N. C., 148; *Lupton v. Express Co.,* 169 N. C., 671.

In *S. v. Lutterloh,* 188 N. C., 412, we held that it was not error for the trial judge to permit photographs, designed to show the width and general topography of the road, where the collision occurred, to be used by witnesses in explaining their testimony. The question presented by this record is whether a photograph made a few days after the homicide, which shows not only the topography of the scene, but which also shows, upon the scene of the homicide, as photographed, persons placed in positions when the photograph was taken which the State contends are the identical positions occupied by deceased, by defendant, and by witnesses, at the very moment of the homicide, may be used by witnesses to illustrate or explain their testimony and may also be received as evidence. The evidence tends to show that the photograph represents the scene of the homicide as reconstructed under the direction of a witness, who was present when the defendant shot the deceased, and that he placed the different persons in the positions as shown in the photograph. It was competent for this person to testify as a witness at the trial as to everything shown in the photograph, the location of the roads, the embankment on or near which deceased was at work when he first saw defendant, the positions occupied by deceased, by defendant, and by the witnesses at any moment from the time defendant appeared on the scene until the fatal shot was fired. His testimony was evidence of these facts; we see no valid ground for objection to the use by the witness of the photograph which he testified was correct, to give to the jury more accurate information of the facts, as this witness testified them to be, than he could give by the spoken word. The witness was subject to cross-examination and could be contradicted by evidence offered by defendant not only as to what he said as a witness, but also as to what the photograph, used by him to illustrate or explain his testimony, showed.

The photographs, taken under the circumstances under which the evidence shows these were taken, were not competent however as evidence, and upon objection by defendant should have been excluded. They were *ex parte,* and did not purport to represent the scene at the time the

homicide was committed. They were inadmissible as evidence to show the relative positions of deceased, of defendant or of witnesses at the time of, or immediately before, the homicide. A photograph which shows the scene of a homicide as reproduced or reconstructed, after the occurrence, is not admissible and should be rejected as evidence. 22 C. J., 920, note 83, citing *Grant v. Chicago, etc., R. Co.,* 176 Ill., A. 292; *Welch v. Louisville, etc., R. Co.,* 163 Ky., 100; *Rodick v. Maine Central R. Co.,* 109 Me., 580; *Fore v. State,* 75 Miss., 727. There must be a New trial.