State v. Hodgen

STATE OF NORTH CAROLINA v. GENE OWEN HODGEN

No. 795SC1013

(Filed 17 June 1980)

1. **Criminal Law § 82.2– examination of criminal defendant by psychiatrist – no physician-patient privilege**

    Where the mental capacity of the accused to proceed to trial is questioned on motion of defense counsel and the trial court commits the defendant to a state mental health facility for examination to determine defendant's capacity to proceed, the physician-patient privilege does not preclude the examining psychiatrist from testifying at trial on the insanity issue.

2. **Criminal Law § 82.2– examination of criminal defendant by psychiatrist – intoxication at time of crimes – no physician-patient privilege – constitutional questions not raised by pleading privilege**

    Where defendant was committed to a state mental health facility to determine his capacity to proceed, testimony by a psychiatrist who examined him that defendant told her he was drinking at the time of the events charged did not violate the Sixth Amendment guarantee of right to counsel or the Fifth Amendment privilege against self-incrimination, since the witness testified that she made no attempt in examining defendant to obtain from him any information relating to the alleged crimes; moreover, defendant made no specific objection to the witness's testimony, and any challenge to the evidence on constitutional grounds was not properly raised by defendant's claim of the physician-patient privilege.

3. **Criminal Law § 5.1– insanity defined – instructions on "knowing" and "right or wrong"**

    In a prosecution for armed robbery where defendant pled insanity, the trial court, in defining insanity as not knowing the nature and quality of one's act or not knowing that it was wrong, was not required to instruct that defendant must have "the will and ability to control his conduct," since such an instruction would in effect recognize the "uncontrollable impulse" defense which is not recognized in N. C.; furthermore, the court was not required to instruct that defendant must know that his act was both legally and morally wrong.

APPEAL by defendant from *Strickland, Judge.* Judgment entered 13 April 1979 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 19 March 1980.

Defendant pled not guilty to charges of (1) armed robbery at Zip Mart on 26 January 1979, and (2) armed robbery at Lee's Grocery Store on 27 January 1979. The jury found defendant

guilty as charged. Defendant appeals from judgments imposing concurrent prison terms of not less than 9 nor more than 12 years.

Defendant by petition raised the question of incapacity to proceed (G.S. 15A, Art. 56). He was committed to Dorothea Dix Hospital in February 1979, for observation and treatment, and a·discharge summary was made by Dr. Mary Rood, forensic psychiatrist, who reported that defendant had an I.Q. of 59 and was able to read at the grade level 4.2, and concluded that "he is competent to proceed in that he understands his legal charges and is able to assist his lawyer." After hearing, the court found that defendant had the capacity to proceed.

Before trial defendant gave notice that he may at trial rely on the defense of insanity. G.S. 15A-959.

At trial the evidence for the State, including confessions made by defendant, established his guilt of both armed robbery charges.

Defendant offered evidence only on the insanity issue. Dr. Rolf H. Fisscher, a psychiatrist, testified that he observed defendant over a period of ten days in August 1977 and found that he was suffering from a catatonic psychosis, which was caused by his wife's abandonment of him the day after their marriage because of his inability to perform sexually. Defendant was sent to Cherry Hospital for treatment. In his opinion defendant could have been suffering from some form of psychosis when the crimes were committed.

Defense witness Dr. William P. Robinson, a psychiatrist, testified that defendant was in Cherry Hospital for 20 days in August 1977 where there was a diagnosis of psychotic depression. Dr. Robinson saw defendant at Southeastern Mental Health Center on 19 March and 30 March 1979, and his diagnosis was chronic undifferentiated schizophrenia, evidenced by defendant's feelings of being possessed by superior powers and by uncontrolled laughter. He was on medication during trial.

Defendant also offered two lay witnesses who testified that defendant was withdrawn and depressed and acted like he had mental problems.

The State in rebuttal offered the testimony of Dr. Mary M. Rood, who had examined defendant at Dix Hospital in February 1979, and found defendant had the capacity to proceed with trial. Defendant objected to her testimony on grounds of the physician-patient privilege. After hearing her testimony, the court found that her testimony was necessary to the proper administration of justice. Dr. Rood testified that defendant answered questions coherently and seemed cheerful. Defendant told her that he had been drinking at the time of the events charged. It was Dr. Rood's opinion that defendant understood the nature of his actions and was able to know whether those actions were right or wrong.

*Attorney General Edmisten by Assistant Attorney General Isham B. Hudson, Jr. for the State.*

*Franklin L. Block for defendant appellant.*

CLARK, Judge.

[1] Did the court err in allowing Dr. Rood to testify for the State in violation of the defendant's physician-patient privilege?

Defendant was committed to Dorothea Dix Hospital under G.S. 15A-1002 on petition of his attorney to aid the trial court in determining the capacity of the defendant to proceed. The report to the court, entitled "Discharge Summary," was made by Dr. Mary M. Rood, a forensic psychiatrist on the staff at the hospital. The report was introduced into evidence by the State, after which it became a "public record" as provided by G.S. 15A-1002(d). It was the opinion of Dr. Rood that defendant "is competent to proceed ..." and the court so found.

It further appears from the Discharge Summary that Dr. Rood went beyond the purpose of defendant's commitment to

the hospital in that Dr. Rood expressed an opinion as to defendant's mental capacity at the time of the alleged crimes, as follows: "As to his responsibility at the time of the alleged crimes, I believe that he was able to distinguish right from wrong with respect to the acts with which he is charged. He states that he was drinking at the time, and alcohol may have impaired his judgment and self-control to some extent."

Dr. Rood was called as a witness by the State, after defendant had offered evidence of insanity at the times of the offenses, to rebut the defendant's evidence by her testimony that in her opinion defendant was sane at the times of the offenses, some two and one-half months before trial. After Dr. Rood testified about her qualifications and was found to be an expert, she was asked if she examined defendant on 21 February 1979, defense counsel objected and sought to invoke the physician-patient privilege.

Where the mental capacity of the accused to proceed to trial is questioned on motion of defense counsel (G.S. 15A-1002), and the trial court commits the defendant to a State mental health facility for examination to determine the defendant's capacity to proceed, the physician-patient privilege does not preclude the examining psychiatrist from testifying at trial on the insanity issue. This ruling was made in *State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928), and recently cited and approved in *State v. Mayhand*, 298 N.C. 418, 259 S.E. 2d 231 (1979), and *In re Johnson*, 36 N.C. App. 133, 243 S.E. 2d 386 (1978). It is noted that the trial judge, pursuant to G.S. 8-53, found that the testimony of Dr. Rood was necessary to the proper administration of justice.

[2] We find that the physician-patient privilege does not preclude the testimony of Dr. Rood. Nor do we find merit in defendant's argument that Dr. Rood's testimony violated the Sixth Amendment guarantee of right to counsel or the Fifth Amendment privilege against self-incrimination. Dr. Rood testified that she made no attempt in examination of defendant to obtain from him any information relating to the alleged crimes. Defendant made no specific objection to the testimony of Dr. Rood that defendant said he had been drinking at the time of the

events charged. Any challenge on constitutional grounds to this evidence was not properly raised by defendant's claim of the physician-patient privilege and should have been raised by proper objection. The failure to make such objection waived the right to raise the question on appeal.

Did the trial court err in failing to give the instructions to the jury requested by the defendant?

[3] The court in instructing the jury gave the usual M'Naghten definition of insanity, that "he either did not know the nature and quality of his act, or did not know that it was wrong." M'Naghten's Case, 8 Eng. Rep. 718, 10 Cl. & Fin. 200 (H.L. 1843); *State v. Willard*, 292 N.C. 567, 234 S.E. 2d 587 (1977). The defendant requested the court to give the following definition of "knowing":

> "The definition of 'knowing' in this context requires more than that the accused merely have an awareness or recognition of the act committed. The defendant must also have the will and the ability to control his conduct."

The broad interpretation of "knowing" to encompass the full range of human personality and perceptions has not been accepted in this State. To instruct that defendant must have "the will to control his conduct" would in effect recognize the "uncontrollable impulse" defense which was rejected in *State v. Terry*, 173 N.C. 761, 92 S.E. 154 (1917).

Defendant also contends that the phrase "right or wrong" should have been defined by the court as follows:

> "In order for the defendant to know 'right from wrong' the law requires that the defendant have a greater capacity than to merely determine that the act was 'legally' wrong. The defendant must also have comprehended, at the time of the act, that what he was doing was also 'morally' wrong. If he felt himself possessed and could not distinguish between good and evil, he is not guilty of any offense against the law, regardless of how he comprehended the act."

It is not required that the defendant must know that his acts in question were both *legally* wrong and *morally* wrong. The test does not involve the understanding of abstract wrong, but only the moral "wrong" of the particular and specific act. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979); *State v. Hairston,* 222 N.C. 455, 23 S.E. 2d 885 (1943); *State v. Terry, supra. See* Gardner, *Insanity As A Defense In The North Carolina Criminal Law,* 30 N.C.L. Rev. 4, 11 (1951); *Cf.,* Comment, *The Insanity Defense in North Carolina,* 14 Wake Forest L. Rev. 1157 (1978).

We conclude that defendant had a fair trial free from prejudicial error.

No error.

Judges MARTIN (Robert M.) and ERWIN concur.