STATE v. J. W. WILBOURNE.

*Criminal Law—False Pretence—Judge's Charge.*

1. The prosecution must establish the truth of every averment, affirmative or negative, necessary to constitute the offence charged.

2. Therefore in false pretence, where it was alleged that the defendant obtained money from the prosecutor upon the representation made that he owned certain bonds, which were deposited with a third party but never exhibited, and the court charged the jury that the burden

34

was upon the defendant to produce the bonds or account for them to their satisfaction ; *Held* error.

(*State* v. *Morrison*, 3 Dev., 299 ; *State* v. *Woodly*, 2 Jones, 276 ; *State* v. *Evans*, 5 Jones, 250 ; *State* v. *McDaniel*, 84 N. C., 803, commented on and approved.)

INDICTMENT for false pretence, tried at October Term, 1882, of NEW HANOVER Criminal Court, before *Meares, J.*

The defendant was tried upon a charge of obtaining goods under false pretenses. The proofs were, that the defendant came to the city of Wilmington, a stranger, and soon thereafter made the acquaintance of the prosecutor, one Amey, to whom he represented that he had come directly from New York by railway, but that a brother of his was coming by water. That he was a member of a commercial house, dealers in cotton in Liverpool, England, which had sent out another agent to purchase cotton, but finding him unfaithful, had sent the defendant in person. That he had eighteen thousand dollars of United States bonds, which together with some important telegrams, were at the express office in the city, but that he had no money to pay the express charges, and thereupon he requested the prosecutor to lend him twenty dollars, so as to enable him to procure the possession of the bonds and telegrams—which loan the prosecutor made to him, upon the strength of these representations and his promise to return the money the next day. The defendant failed to return the sum borrowed at the time agreed, and the prosecutor going in search of him, found him handling some cotton, and he immediately apologized for his failure to return the money by saying that he had been busy all day, buying cotton, of which he had purchased during the day six hundred dollars worth, but promised to return the twenty dollars the following day, upon which assurance the prosecutor was induced to lend him two other sums of money. The defendant also represented to one Hooper, at whose house he stayed for nine nights, that

the aforesaid amount of bonds was contained in two packages, which he had, and which he gave to Hooper to hold for him until he had occasion to use them—the packages being sealed. Hooper took them in charge and kept them locked up for several days, though without ascertaining their contents. On a certain occasion the defendant asked for the package, but when handed to him said, "never mind, I have six hundred dollars in my pocket, and I will make that do for the present." After the lapse of several days the defendant took the packages from Hooper, and carried them to the register of deeds for the county, and requested him to take charge of them, saying they were valuable, but without specifying their contents. One package was marked "Dr. J. W. Wilbourne, No. —, King Street, Liverpool."

On one occasion, the prosecutor and the said register went together to Hooper's house (the defendant's boarding house) for the purpose of demanding an inspection of the bonds, but before getting to Hooper's the said register found defendant at another place and delivered the package to him; the prosecutor expressed a belief that the defendant intended to run away, and insisted that he must either pay him the amount borrowed, or secure it in some way, and he also demanded to see the bonds, to all of which the defendant replied that he would prove to him, the next morning, that he was a gentleman—though he did not then or at any other time exhibit the bonds.

It was also shown in evidence that the defendant informed the teller of one of the banks that he had eighteen thousand dollars worth of said bonds which he wished to sell, and was advised to send them to New York, and that about a week thereafter, he said that he had so disposed of them.

The defendant introduced no evidence, but his counsel insisted that the burden rested upon the state to show that he did not have in his possession the bonds as alleged by

him, and that in the absence of such proof on the part of the state, he was entitled to an acquittal.

His Honor after stating to the jury the general rule as to the burden of proof resting upon the state, and its being incumbent on the prosecutor to establish the falsity of the alleged representations, instructed them, that, "in a case like this, where the bonds in question were never exhibited to any one by the defendant, and if they ever had any existence at all, are either in his possession, or have been disposed of by him, the burden of proof is shifted, and it is incumbent upon him to produce them, or to account for their disposition to the satisfaction of the jury, to which instruction the defendant excepted. Verdict of guilty, judgment, appeal by defendant.

*Attorney General*, for the State.
No counsel for defendant.

RUFFIN, J. It is conceded to be necessary in order to complete the charge against the defendant, that the bill of indictment should contain an averment to the effect that he did not own the bonds in question, or have them in his possession, as he pretended to the prosecutor, and upon the strength of which pretence he obtained the prosecutor's money.

The only question then is, as to the burden of proof, whether it rested with the state to prove this negative averment, or whether as the judge instructed the jury it was so shifted, under the circumstances of the case, as to make it incumbent upon the defendant to exculpate himself, by producing the bonds or giving a satisfactory account of the manner in which he had disposed of them.

The general rule most undoubtedly is that the truth of every averment, whether it be affirmative or negative, which is necessary to constitute the offense charged must be estab-

lished by the prosecutor. The rule itself is but another form of stating the proposition, that every man charged with a criminal violation of the law is presumed to be innocent until shown to be guilty, and it is founded, it is said, upon principles of natural justice; and so forcibly has it commended itself by its wisdom and humanity to the consideration of this court, that it has never felt willing, whatever circumstances of difficulty might attend any given case, to disregard it.

In *State* v. *Morrison,* 3 Dev., 299, it was held that upon a charge for unlawfully retailing spirituous liquors, it was incumbent upon the defendant to prove the license, in case he relied upon one for his defense, and we were referred to that case, by the Attorney-General, in his argument here, as an instance, in which the court had shifted the burden, when the proof lay peculiarly in the knowledge of the accused party, and such most certainly does seem to be its import.

But that decision came under review in the latter case of *State* v. *Woodly,* 2 Jones, 276, and it was then construed as meaning, not that the burden of proof was shifted in such a case, from the prosecutor to the defendant, but that a failure of the latter to produce a license might under certain circumstances become a cogent fact to be considered by the jury, in connection with the other facts of the case, tending to support the averment of the indictment. As thus understood, it ceases to be an exception to the general rule stated, but rather becomes a support for it, and as BATTLE, J., declares, " the great conservative principle so essential to the security of those charged with crime, that they shall be presumed to be innocent until the contrary is shown, is preserved in all its integrity."

As we had occasion to say in *State* v. *McDaniel,* 84 N. C., 803, it is manifest from the tenor of the decision in *State* v. *Woodly, supra,* and also in *State* v. *Evans,* 5 Jones 250, that the court has never been satisfied to go to the length of the

argument made in *Morrison's* case, and though not willing expressly to overrule it, have been at great pains to limit its authority, as a precedent, strictly to the facts of the case, and to deny that any general principle could be drawn from it for general application.

Accordingly in both those cases, it was held that the *want of a license*, in a prosecution for dealing with slaves, must be proved on the part of the state.

We were also referred to *Rex* v. *Stone*, 1 East., 639; *Rex* v. *Turner*, 5 M. and S., 206, and *Bower* v. *Mississippi*, 41 Miss., 470, as other instances in which the courts had departed from the general rule, but in all these cases it will be found upon examination, either, that the negative averments had reference to some *personal qualification* peculiar to the defendants, or that the proof thereof depended upon the *contents of some written document*, committed to the sole custody of the person accused, and consequently they can have but little or no application to a case like the present.

So far as our researches go, there is no case to be found in which such a doctrine has been so far extended as to dispense with proof, on the part of the state, of an averment connected with the transaction out of which the prosecution grew, and forming, as it does in this instance, so essential and substantive a part of the charge against the defendant. So to extend it, BATTLE, J., declares in *Woodly's* case, would be to do violence to the fundamental principle that every person accused of crime is presumed to be innocent until shown to be guilty; which principle, he says, has no limit, but applies to the whole charge, and embraces every averment necessary to constitute the alleged offence.

As was wisely said in *Commonwealth* v. *Thurlow*, 24 Pick., 374, it will not do to allow the difficulty of obtaining proof to dispense with the necessity of it altogether, so as to enable a party upon whom the burden should rest, to succeed without proof.

His Honor, in this case, might with much propriety have instructed the jury, that they might consider the defendant's failure to produce, or account for, the bonds, as a circumstance to be weighed with the other testimony in the case, in determining the truth of the averment, which negatived such possession on his part; and had the jury, acting under such instructions, pronounced the defendant guilty, we can see no possible grounds upon which their verdict could have been justly criticised.

But when His Honor instructed the jury that they should accept as true that averment in the indictment, and hold it to be such, until the defendant should conclusively disprove it (and such we understand to be the purport of the instructions given) we are constrained to say that he went beyond the law as we understand it, and overlooked for the moment the humane presumption of innocency, with which it clothes every person accused of crime, and consequently there must be a *venire de novo.*

Error.                                    *Venire de novo.*