## STATE v. JOHN A. SMITH.

(Filed 15 November, 1913.)

1. **Abandonment—Burden of Proof.**

   To convict the husband of abandonment (Revisal, sec. 3355), it is necessary for the State to allege and prove the act of abandonment and the failure of the husband to provide adequate support for the wife and their child or children of the marriage; and that the act of abandonment was willful and without just cause.

2. **Abandonment—Consent of Wife.**

   Where the wife has consented to a separation from her husband, his leaving her is not an abandonment within the meaning of the statute, Revisal, sec. 3355.

3. **Appeal and Error—Briefs—Exceptions Abandoned.**

   An exception not appearing in appellant's brief is considered as abandoned in the Supreme Court (Rule 34, 140 N. C., 498);

nor will it be sustained when it is not made to appear by the record that the alleged error was prejudicial to the appellant's rights.

### 4. Abandonment—Evidence—Harmless Error.

Where it is not contested that the husband had actually abandoned his wife, on a trial under an indictment for abandonment (Revisal, 3355), the admission of testimony of the sheriff that he could not find the husband to serve his process is immaterial and harmless.

### 5. Abandonment—Evidence—Willful Act.

Upon a trial under an indictment for abandonment (Revisal, sec. 3355), there was evidence that the husband had offered to make a home for his wife and child in another town, and that she refused to go there with him. There was evidence that this offer was not made in good faith, and that it was the husband's purpose to make the surroundings of his wife such as to entrap her and lead her into conduct that would give him ground for divorce, and to separate her from her near relations and friends for the purpose. The jury having accepted the version of the prosecutrix, the verdict against the prisoner is not affected, the abandonment being nevertheless willful on the part of the husband.

### 6. Appeal and Error—Prejudicial Error—New Trial—Evidence—Pleadings—Husband and Wife.

Evidence erroneously admitted upon a trial must be prejudicial and not merely theoretical error in order to entitle the complaining party to a new trial; and where the act of abandonment (Revisal, sec. 3355) and the failure to support are not contested, it is not prejudicial error for the court to admit a part of the defendant's answer forbidden by Revisal, sec. 493, in an action for divorce brought by his wife, to the effect that the husband had sold his property, etc., and had gone to certain places beyond the State.

APPEAL by defendant from *Bragaw, J.,* at March Term, 1913, of UNION.

*Attorney-General for the State.*

*Adams, Armfield & Adams and Redwine & Sikes for defendant.*

WALKER, J. This is an indictment against the defendant for abandonment of his wife without providing adequate support

for her and their child, under Revisal, sec. 3355. The evidence unfolds a very sad, but revolting, story of this unhappy marriage, caused by the persistent indifference of the defendant towards the prosecutrix and his constant neglect of her, which finally culminated in his desertion of his home and his refusal to perform his marriage obligations. He had seduced this woman before their marriage, "with studied, sly, ensnaring art," and pleaded scriptural authority for his betrayal of her and her consequent ruin. He went through the form of redeeming his promise, it is true, and married her, but with evident intent of dissolving the unhallowed union. He plied her with false and repeated accusations of infidelity to him, and refused to support her, in the studied execution of his preconceived design of breaking off their marital relations and forcing her to set him free by suing for a divorce. He saved himself from a prosecution for this seduction by the formal ceremony of marriage, for so far as he is concerned, it really had no moral sanction. A child was born to them. Shortly after the marriage he began his persecution of his wife by baseless charges of her intimacy with other men, which he himself must have known were without foundation in fact. He proposed that he debauch himself, so that she could get a divorce, and failing in this, he indecently proposed that she do the same thing and give him grounds for severing the marital tie—adding that he would give her $500 to release him in that way. He told her that he had a wife and children in Florida; but this was not true, and seems to have been said to frighten her into submission to his will.

The jury might well have found from the evidence, not only that he deserted her willfully after the marriage, and failed to furnish her and their child an adequate support, but that he clearly intended, when he married her, to separate himself from her, and to add the crime of abandonment to that of antenuptial seduction, which she had condoned by the marriage and which stood as a bar to his criminal indictment. She scornfully resented all of his immoral suggestions and wicked solicitations and indignantly protested against his evil course towards her, which had grown from bad to worse. When baffled by her

steady refusal to defile herself for his vile purposes, or even to listen to his base proposals, he then tried to subject her to temptation, and offered a bribe for the purpose of placing her in a compromising position so that he could use the testimony of his accomplice against her virtue. But he again failed, and finally offered to take her to a neighboring city to live; but she declined to go, as his previous treatment and his conduct had convinced her that he was not acting in good faith, after a change of heart and promise of repentance and reform, but solely for the purpose of removing her from the protection of her friends and family, and so isolating her that he might the more easily and successfully continue in his efforts to destroy her character out of the mouths of suborned witnesses of low degree; and, if the evidence is credible, she had good reason to think so and to take counsel of her fears. He complained of her extravagance, when she had spent none of his money. For some weeks after the marriage they lived at her grandmother's home. The evidence shows that during this period, as the Attorney-General puts it, "he squandered on her the sum of 30 cents. Not being able to stand such excessive cost of living, the defendant made arrangements for him and his wife to live in the home of the wife's father. He carried his wife and all of their belongings to the father's home, but after eleven days, during which time he spent only one night with his wife, he moved his own things away, and has never lived with her since." He finally left for Florida, remaining away several months, and stating, while there, that he never expected to live with his wife again, and that the people at his home could do nothing with him, as "if it got hot he could go somewhere else and stay," and he repeated this declaration several times, and once admitted that he married the prosecutrix to get rid of trouble he had brought upon himself, alluding to his seduction of her.

The defendant introduced no evidence; but this failure on his part to explain the damaging facts we have recited (and there are more of the same kind in the testimony sent up) cannot be used against him, and should prejudice him in no degree.

The abandonment must be willful, that is, without just cause or excuse—unjustifiable and wrongful. *S. v. Hopkins,* 130 N. C., 647; *S. v. Toney,* 162 N. C., 635. If she consented to the separation, his departure from her home and living apart from her would not be an abandonment. *Witty v. Barham,* 147 N. C., 479.

There are two ingredients of this crime—abandonment and failure to provide adequate support for wife and child; and both must be alleged and proved. *S. v. May,* 132 N. C., 1021. The State offered ample evidence to establish the completed offense.

Defendant's offer to provide a home for his wife in Charlotte is no defense, if it was not genuine or made in bad faith. The court submitted this view of the case to the jury by fair, full, and correct instructions, and they found against the defendant. The verdict, in that particular, is well warranted by the evidence, and the defendant has alleged no error with respect to it.

He assigns in the case on appeal four errors: The first, as to the introduction of the complaint filed in a divorce suit brought by his wife, is abandoned, as it does not appear in his brief. Rule of this Court No. 34 (140 N. C., 498); *Rogers v. Manufacturing Co.,* 157 N. C., 484. But if it was before us, we could not sustain it, as the contents of the pleading is not set out, and we therefore cannot see that the ruling was prejudicial. *S. v. Pierce,* 91 N. C., 606; *Whitmire v. Heath, ibid.,* 304; *Fulwood v. Fulwood,* 161 N. C., 601; *In re Penny's Will,* 21 Minn., 280; *In re Smith's Will,* 163 N. C., 464.

The second exception, which was taken to the testimony of the sheriff that he could not find defendant in the county when he attempted to serve his process, was only relevant upon the ground that there was evidence he was trying to evade the service and had absented himself. But in the view we take of the case, it is an immaterial fact, and was harmless. It was not disputed, either here or below, so far as appears, that defendant had intentionally abandoned his wife, that is, left her and his child without any adequate support, and he is guilty, unless he was justified in so doing, which we have seen was not the case.

The same may be said of the third exception relating to the same subject.

The fourth exception, as to the introduction of part of the answer in the divorce suit, would give us some trouble if the record admitted by the court were at all essential as a link in the chain of evidence, but we think it is not, and if error there be, it is harmless. If material evidence is improperly admitted, there should of course be a reversal, even though there be enough, or an abundance, of other proof upon which the verdict could have been found for the State. *Church v. Hubbert,* 2 Cranch. (U. S.), 187 (2 L. Ed., 249).

A defendant is entitled in law to hear the particular accusation against him; to have the prosecution restricted to that accusation, and consequently the proof, and not' to be convicted of any other offense than the one specially charged in the indictment. This is his natural and constitutional right. But there must be prejudicial and not merely theoretical error.

Verdicts and judgments should not be lightly set aside upon grounds which show the alleged error to be harmless or where the appellant could have sustained no injury from it. There should be at least something like a practical treatment of the motion to reverse, and it should not be granted except to subserve the real ends of substantial justice. Hilliard on New Trials (2 Ed.), secs. 1 to 7. The motion should be meritorious and not frivolous. The commentators on New Trials, Graham and Waterman (vol. 3, page 1235), thus state the prevailing rule:

"The foundation of the application for a new trial is the allegation of injustice, and the motion is for relief. Unless, therefore, some wrong has been suffered, there is nothing to be relieved against. The injury must be positive and tangible, not theoretical merely. For instance, the simple fact of defeat is, in one sense, injurious, for it wounds the feelings. But this alone is not sufficient ground for a new trial. It does not necessarily involve *loss* of any kind, and without loss or the probability of loss there can be no new trial. The complaining party asks for redress, for the restoration of rights which have first

been infringed and then taken away. There must be, then, a probability of repairing the injury, otherwise the interference of the Court would be but nugatory. There must be a reasonable prospect of placing the party who asks for a new trial in a better position than the one which he occupies by the verdict. If he obtain a new trial, he must incur additional expense, and if there is no corresponding benefit, he is still the sufferer. Besides, courts are instituted to enforce right, and restrain and punish wrong. Their time is too valuable for them to interpose their remedial power idly, and to no purpose. They will only interfere, therefore, where there is a prospect of ultimate benefit." Tried by this rule, we do not think any reversible error was committed.

Defendant says that such evidence is forbidden by Revisal, sec. 493: "The verification may be omitted when an admission of the truth of the allegation might subject the party to prosecution for felony. And no pleading can be used in a criminal prosecution against the party as proof of a fact admitted or alleged in such pleading." If defendant's construction of this statutory provision is conceded, we are yet of opinion there was no substantial error. We do not see how the admission in the answer that defendant had sold his property and paid a part of his debts can have any material bearing upon the issue in this case, nor how the fact that he went to Florida and other places could have prejudiced him in his defense. It made no difference that he went to other States. The fact was not denied that he left his wife in this State, before he went elsewhere, and it was immaterial to inquire as to his whereabouts afterwards. If the pleading was introduced to contradict defendant's admission therein by showing that he did not visit those places, we would order a new trial if we could see that he had been harmed by it, but it clearly appears from a careful review of the whole case that such has not been the result. The uncontroverted facts showed a plain case of guilt under the statute, and there was no pretense of legal excuse, apart from the promise of a home in Charlotte, which the jury have found to have been a mere attempt to lure his wife, who was pure and had been faithful,

164—31

to her own ruin, that he might have cause to put her away. She was too wary for him, and declined to walk into the net he had so vainly spread for her.

There was no error in the trial.

No error.