## STATE v. DAVID FALKNER.

### (Filed 19 October, 1921.)

**1. Criminal Law—Abandonment of Wife—Husband and Wife—Statutes— Strict Construction.**

C. S., 4447, making it a misdemeanor for a husband to willfully abandon his wife without providing for her support and that of the children of the marriage, should be strictly construed, and its terms may not be extended to include, by implication, cases not clearly within its meaning.

**2. Same—Burden of Proof—Defenses.**

The willful abandonment of the wife is an essential element of the offense made criminal by C. S., 1447, and the prosecutrix is required to show beyond a reasonable doubt, upon the issue of defendant's guilt, that he had willfully abandoned her without providing adequate support, from which the jury may infer, if so satisfied, that it had been done intentionally, without just cause or legal excuse.

**3. Same—Statutes in Pari Materia.**

C. S., 4448, by specifying certain circumstances under which the failure of the husband to provide an adequate support for his wife and children, shall be presumptive evidence that such abandonment and neglect was willful, construed with the preceding section 4447, making his willful abandonment a misdemeanor, evidences that the legislative intent was well considered, and that not the mere abandonment, but the willful abandonment was the criminal act contemplated.

**4. Same—Evidence.**

In order for the jury to acquit a defendant tried for the willful abandonment of his wife it is not required that he introduce evidence in his defense, nor is his failure to have done so to be taken against him, and the burden of the issue remains on the State throughout the trial. C. S., 4447.

**5. Same—Wife's Unchastity.**

Upon the trial of the husband for abandonment, C. S., 4447, the wife's unchastity is a defense, which he may put in issue by cross-examination or otherwise, with the burden remaining on the State to show his guilt beyond a reasonable doubt.

**6. Same—Burden to Produce—Evidence.**

Upon the trial of the husband for the willful abandonment of his wife, C. S., 4447, the burden of producing evidence of the wife's unchastity is not upon the husband, or within the rule applicable when the facts and circumstances are peculiarly within the knowledge of the party relying upon them.

**7. Criminal Law — Abandonment— Defense—Evidence—Facts Admitted or established—Statutes.**

Where the nonsupport and abandonment of the husband are both established or admitted, C. S., 4448, it may be necessary for the defendant to come forward with his evidence and proof to avoid the risk of an adverse verdict.

**8. Criminal Law—Husband and Wife—Abandonment—Civil Remedies—Statutes.**

Requiring the State to show the husband's willful abandonment of his wife, etc., beyond a reasonable doubt, C. S., 4447, does not deprive the wife of her civil remedies under the provisions of section 1667.

**9. Appeal and Error—Instructions—Conflicting Instructions—Reversible Error.**

Where the judge's charge to the jury is conflicting as to the law material to the answer of the issue, it is reversible error.

**10. Same—Husband and Wife—Abandonment—Statutes—Criminal Law.**

Where there is evidence that the husband indicted for the willful abandonment of his wife, etc., under C. S., 4447, was occasioned by her unchastity, it raises the question of his criminal intent therein, and it is reversible error for the court to charge the jury that the burden was on the defendant to satisfy them by the greater weight of the evidence of the fact of her unchastity, though he has charged them that the burden was on the State to show guilt beyond a reasonable doubt.

CLARK, C. J., dissenting.

APPEAL by defendant from *Cranmer, J.,* at March Term, 1921, of VANCE.

Criminal prosecution, tried upon an indictment under C. S., 4447, charging the defendant with willfully abandoning his wife without providing for her adequate support as required by law.

The prosecutrix and defendant were married 2 June, 1918. The defendant enlisted in the Navy three days later, and while stationed in Norfolk, Va., his wife spent some time with him there. He was discharged in January, 1919, and returned to his home in Henderson, where he lived with his wife until July, 1920. Defendant testified that he left the prosecutrix on account of her infidelity, and because she had infected him with a venereal disease. There are no living children of the marriage. Upon the question of the wife's adultery, the evidence was conflicting.

The defendant's principal exception is directed to the following portion of his Honor's charge, dealing with the burden of proof:

"If you shall find the defendant abandoned his wife without providing adequate support for her, and that such abandonment and failure were provoked and caused by the infidelity of the wife of the defendant, or for any just cause he had abandoned his wife, then in either case you would acquit the defendant.

"The burden being upon the defendant to satisfy you of the adultery of the wife, not beyond a reasonable doubt, nor by the greater weight of the evidence, but simply to your satisfaction. You will consider and pass upon all the evidence in the case in making up your verdict, and determine what weight you will give to it."

The court subsequently charged the jury as stated in the record: "That the burden was on the State to satisfy them from all the evidence beyond a reasonable doubt that the defendant willfully abandoned his wife without providing adequate support for her, and that if they were so satisfied they would find defendant guilty, but if they were not so satisfied they would find the defendant not guilty."

There was a verdict of guilty, and from a judgment of eighteen months on the roads pronounced thereon the defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. H. Bridgers for defendant.*

STACY, J.   C. S., 4447, under which the defendant is indicted, provides as follows: "If any husband shall willfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor."

It will be observed that a *willful* abandonment is the conduct which is condemned by this enactment of the Legislature.   Being a penal statute, we must apply the rule of strict construction, and we are not at liberty to extend its terms, by implication, to include cases not clearly within its meaning.   *S. v. Colonial Club,* 154 N. C., 177; *S. v. R. R.,* 122 N. C., 1052.   Willfulness is an essential element of the crime, and this must be found by the jury.   The issue, upon an indictment for a violation of the present law, is the alleged guilt of the defendant.   He enters on the trial with the common-law presumption of innocence in his favor.   When the State has shown an abandonment and the defendant's failure to provide adequate support, the jury may infer from these facts, together with the attendant circumstances, and they would be warranted in finding, if they are so satisfied beyond a reasonable doubt, that it had been done intentionally, without just cause or legal excuse, *i. e., willfully.* *S. v. Taylor,* 175 N. C., 833.

The position just stated has been approved by us in a number of carefully considered decisions.   "The abandonment must be willful, that is, without just cause or excuse—unjustifiable and wrongful." *S. v. Smith,* 164 N. C., 475.   Again, in *S. v. Morgan,* 136 N. C., 628, *Mr. Justice Walker,* speaking for a unanimous Court, says: "If the act may be innocent or not according to the intent with which it is done, or if its criminality depends upon the intent, it is incumbent on the State to show the intent or to show the facts and circumstances from which the intent may be inferred by the jury, and it is necessary that the jury should find the intent as a fact before the defendant charged with the

commission of the act can be adjudged guilty of a crime," citing *S. v. McDonald,* 133 N. C., 680. Unless the willfulness of the defendant's conduct is established, the offense is not made out; and this is a question of fact for the jury, under all the evidence, and not for the court. *S. v. King,* 86 N. C., 603; *S. v. Wolf,* 122 N. C., 1079; *S. v. Martin,* 141 N. C., 832.

In this connection it may be well to observe that the next section, C. S., 4448, dealing with what shall be deemed presumptive evidence of a willful abandonment, requires the showing of something more than a mere separation and failure to provide adequate support. These circumstances having been established, "then the fact that such husband neglects applying himself to some honest calling for the support of himself and family, and is found sauntering about, endeavoring to maintain himself by gambling or other undue means, or is a common frequenter of drinking houses, or is a known common drunkard, shall be presumptive evidence that such abandonment and neglect is willful." Thus it would appear that the Legislature selected the words of the statute, under which the defendant is indicted, with studied care and deliberation, and with a full appreciation of their meaning.

The defendant is not required to offer any evidence, and his failure to do so is not to be taken against him. *S. v. Smith, supra.* Hence, upon the question of his wife's alleged infidelity, or unfaithfulness, the burden of proving the issue, as distinguished from the duty of going forward with the evidence, is not shifted to the defendant. He may put the question of her chastity in issue, by cross-examination or otherwise, but this does not reverse the position of himself and that of his wife and make him the prosecutor and his wife the defendant. She is not on trial. The burden is still with the State, under all the evidence, to satisfy the jury, beyond a reasonable doubt, of the defendant's guilt. *S. v. Woodly,* 47 N. C., 276; *S. v. Wilbourne,* 87 N. C., 529; *S. v. Hopkins,* 130 N. C., 647; *S. v. Connor,* 142 N. C., 700; *S. v. Leeper,* 146 N. C., 655, and *S. v. R. R.,* 149 N. C., 470.

It is sometimes said that the burden of producing evidence rests upon the party best able to sustain it, because of facts and circumstances peculiarly within his knowledge. Thus it was held in *Farrell v. State,* 32 Ala., 557, that the existence of a license being a fact peculiarly within the knowledge of the party accused, it was incumbent upon him to show the license, even though the nonexistence thereof was the gravamen of the offense charged. To like effect, and for the same reason, are our own decisions. *S. v. Morrison,* 14 N. C., 299; *S. v. Smith,* 117 N. C., 809; *S. v. Emery,* 98 N. C., 670; *S. v. Glenn,* 118 N. C., 1194; *S. v. Holmes,* 120 N. C., 576. But in the instant case the alleged adultery of the defendant's wife is not a fact peculiarly within the defendant's

own knowledge. Indeed, if this rule is to be invoked here—and we do not think it is—it might well be said that such is undoubtedly within the knowledge of the prosecutrix. At any rate, we hold that the raising of this question does not shift the burden of the issue to the defendant. *Govan v. Cushing,* 111 N. C., 458. On the other hand, in a case like the one at bar, where the husband is indicted for a willful abandonment and nonsupport, there is no presumption of law or of fact against the wife's virtue. She not being on trial, the matter is left at large, and it is an open question, just like any other question of fact, to be determined by the jury. Certainly there is no presumption that she has committed adultery, or that she has been unfaithful to her marriage vow.

The position here taken, with respect to the burden of the issue, has been approved in a long line of decisions, and is nowhere better stated than by *Ruffin, J.,* in *S. v. Wilbourne,* 87 N. C., 529, as follows: "The general rule most undoubtedly is that the truth of every averment, whether it be affirmative or negative, which is necessary to constitute the offense charged, must be established by the prosecutor. The rule itself is but another form of stating the proposition that every man charged with a criminal violation of the law is presumed to be innocent until shown to be guilty, and it is founded, it is said, upon principles of natural justice; and so forcibly has it commended itself, by its wisdom and humanity, to the consideration of this Court that it has never felt willing, whatever circumstances of difficulty might attend any given case, to disregard it."

Of course, where an abandonment and nonsupport are both established or admitted, it may be necessary for the defendant to come forward with his evidence and proof, or else run the risk of an adverse verdict. But where there is no opposite presumption sufficient to overcome the presumption of innocence, the most that can be required of him, under our system of jurisprudence, is explanation, not exculpation. The defendant is not required to show his innocence. The State must establish his guilt beyond a reasonable doubt, and the burden of this ultimate issue never shifts. The laboring oar upon the question of guilt is constantly with the prosecution. *S. v. Wilkerson,* 164 N. C., 432.

In *Shepard v. Tel. Co.,* 143 N. C., 244, the present *Chief Justice,* speaking for a unanimous Court, states the rule as follows: "In criminal cases, when a homicide with a deadly weapon is proved or admitted, there is a presumption of law that the killing is murder, and the burden is on the prisoner to prove all matters in mitigation or excuse to the satisfaction of the jury, *S. v. Matthews,* 142 N. C., 621; and when a totally independent defense is set up, as insanity, which is really another issue, *S. v. Haywood,* 94 N. C., 847, the burden of that issue is on the prisoner. But the burden of the issue as to the guilt of the prisoner,

STATE *v.* FALKNER.

except where the law raises a presumption of law as distinguished from a presumption of fact, remains on the State throughout, and when evidence is offered to rebut the presumption of fact raised by the evidence, the burden is still on the State to satisfy the jury of the guilt of the prisoner upon the whole evidence. Notably, when the prisoner offers proof of an *alibi,* for example, which goes to the proof of the act. *S. v. Josey,* 64 N. C., 56." This case has been approved in a number of later decisions. See *Cox v. R. R.,* 149 N. C., 117; *Winslow v. Hardware Co.,* 147 N. C., 275, and Shepard's N. C. Citations.

"The rule as to the burden of proof is important and indispensable in the administration of justice, and constitutes a substantial right of the party upon whose adversary the burden rests. It should, therefore, be jealously guarded and rigidly enforced by the courts." 22 C. J., 69; *Hughes v. R. R. Co.,* 85 N. J. L., 212; Wigmore on Evidence, sec. 2483 *et seq.*

The case of *S. v. Schweitzer,* 57 Conn., 532, while apparently an opposite persuasive authority in support of his Honor's charge, must be read in connection with the Connecticut statute which in terms is different from ours. Section 6416, General Statutes of Connecticut, provides: "Every person who shall unlawfully neglect or refuse to support his wife or children shall, upon conviction, be deemed guilty of a felony, and shall be imprisoned not more than one year, unless he shall show to the court before which the trial is had that, owing to physical incapacity or other good cause, he is unable to furnish such support," etc.

It will be noted that the word "unlawfully" is used in the Connecticut statute, while in ours the word "willfully" is employed. An unlawful act is not necessarily willful. *S. v. Morgan,* 136 N. C., 628.

"The word 'willful,' used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing the act purposely and deliberately, indicating a purpose to do it, without authority—careless whether he has the right or not—in violation of law, and it is this which makes the criminal intent, without which one cannot be brought within the meaning of a criminal statute." *S. v. Whitener,* 93 N. C., 590. The term *unlawfully* implies that an act is done, or not done, as the law allows, or requires; while the term *willfully* implies that the act is done knowingly and of stubborn purpose. *S. v. Massey,* 97 N. C., 465. *Schweitzer's case* is thus distinguishable from the one at bar, for, under the Connecticut statute, the State is not required to show a willful neglect in order to make out its case; while with us such is a prerequisite according to the express terms of the statute.

The case of *S. v. Hopkins,* 130 N. C., 647, must be overruled if his Honor's charge in the instant case is to be upheld; and this would carry with it a reversal of *S. v. Smith,* 164 N. C., 475, and *S. v. Taylor,* 175

N. C., 833. But it is said that, in these cases, the Court, by "judicial legislation," has engrafted something into the statute without authority and contrary to the expressed intention of the Legislature. It is even suggested that adultery on the part of a wife is no excuse for the husband's abandonment and failure to provide for her support. Though we have declared otherwise, it is said in criticism that these decisions belong to another day and to another age, and that we should now advance from such a "barbarism." After mature reflection and earnest consideration, we are unwilling to overrule these cases. We think they correctly state the law on the subject of the burden of proof as it obtains in this jurisdiction. The decision in *S. v. Hopkins, supra,* was rendered nearly twenty years ago, and the numerous Legislatures which have assembled since that time, have not seen fit to amend or to make any change in the present statute. That a husband may not be convicted for abandoning an adulterous or unfaithful wife is a position so well fortified by every reasonable consideration, and by the force of its own righteousness, as to meet with the approval of the common judgment of men. To argue otherwise is but to complain at the standard of human conduct, established in accordance with the eternal fitness of things and in keeping with the everlasting verities. So far as our investigation discloses, no court has ever held to the contrary; and we are confident that our present construction is entirely permissible, and we think entirely correct, under the use of the words in the statute of "willfully abandon."

It may not be amiss to remark that the defendant is not to be released or discharged; he is to be tried again. Furthermore, his wife is not without the civil remedies which are vouchsafed to her by the law. See C. S., 1667, and cases cited thereunder.

Upon a careful perusal of the record, we think the charge as applied to the defendant was misleading in its effect; and while the court's general charge, in other sections, placed the burden of proof upon the State in proper form, yet this specific instruction with respect to the wife's alleged adultery was calculated to mislead, and in all probability did mislead the jury. *S. v. Morgan,* 136 N. C., 628. It is well settled that where there are conflicting instructions with respect to a material matter, a new trial must be granted, as the jury are not supposed to know which one of the two states the law correctly, and we cannot say they did not follow the erroneous instruction. *Edwards v. R. R.,* 132 N. C., 99; *Williams v. Haid,* 118 N. C., 481; *Tillett v. R. R.,* 115 N. C., 662.

The evidence offered by the defendant was in reply to the necessary allegation that his conduct had been willful, but the law does not cast upon him the burden of disproving the criminal intent. This is a fact which the State must establish, not only to the satisfaction of the jury,

but beyond a reasonable doubt, before a verdict of guilty can be rendered against him. The instruction of his Honor was equivalent to saying that, upon the question of intent, the burden was on the defendant to satisfy the jury that he had not acted willfully. It is true the instruction related to a specific fact, to wit, the alleged adultery of the wife; but this circumstance, and all the testimony bearing upon it, was competent only on the question of intent. In no other view was the evidence material and relevant.

For the error in the charge, as indicated, in placing too heavy a burden on the defendant, we are of opinion that the cause must be submitted to another jury, and it is so ordered.

New trial.

Clark, C. J., dissenting: The defendant is indicted under C. S., 447, which provides: "If any husband shall willfully abandon his wife, without providing adequate support for such wife and the children which he may have gotten upon her, he shall be guilty of a misdemeanor." There is no proviso or exception in the statute.

The defendant testified that he had left his wife, and defiantly added that he had not contributed to her support, and does not intend to do so, nor to live with her. His contention is that though he has abandoned his wife and is not giving her any support—which are the acts which the statute makes a misdemeanor—he cannot be convicted unless his wife shall show beyond a reasonable doubt that he has no excuse for doing so, and that the burden is on her to show beyond a reasonable doubt that she has not committed adultery or done any other act which would justify him in procuring a divorce from her!

Such a proposition is not authorized by the statute, and cannot be sustained in reason or by precedent, save in an obiter expression in *S. v. Hopkins,* 130 N. C., at p. 649, and some cases based thereon.

If the wife has done anything which will justify releasing the defendant from the marriage, the burden is on him to bring such action, and by preponderance of proof to satisfy the jury of the truth of his allegations, and even that will not release him from the obligation under this statute to support his innocent children, for in *S. v. Kerby,* 110 N. C., 558, it is held that "the failure by the father to provide for the support of the children is as much of a violation of this statute as the failure to provide support for the wife." And while a divorce would release him from liability for her support, it would not relieve him of the moral and legal obligation to support his children.

The contention of the defendant that when notwithstanding he is proven, or admits (as in this case) that he has abandoned his wife and does not support her, that she is presumed beyond a reasonable doubt

to be guilty of adultery or some other cause that will justify him in such conduct, and that the burden is upon her to show to the contrary beyond a reasonable doubt, if it were well founded would simply relieve him of the expense and burden of proof in proving her misconduct in an action to sever the marriage tie; and that if she fails to prove beyond a reasonable doubt that he is not entitled to a divorce he is discharged from such liability as fully as if there had been a divorce granted. · This turns this proceeding practically into an action for divorce, but throws the burden of proof upon the wife.

The whole case, therefore, turns upon an inadvertent construction placed upon the word "wilful" in *S. v. Hopkins,* 130 N. C., 649, which says that *wilful* means "without a cause to justify him in doing so." This certainly cannot be sustained by anything in the statute, and is contrary to every definition of the word in all the dictionaries and is unjust, for it puts upon the woman the burden of disproving everything that the plaintiff is required to prove in bringing an action for divorce. A reference to that case will show that it was as the judge said : "A remarkable case," but not in the sense that the writer of that opinion intended (which was by a divided Court), and was more a criticism of the trial judge than a decision of the case upon the merits as a matter of law. The statement therein that the trial judge had made the case "a trial of the wife for adultery" was the very thing which that opinion requires, for if followed it will make every trial for abandonment · primarily a trial for divorce, the entire burden being thrown, contrary to law, upon the wife to disprove the charge of any and all conceivable misconduct.

The word *"wilful"* is defined in "Webster's International Dictionary" as "voluntary, intentional, purposely." In almost the same words is the definition given by the "Century," "Worcester," "Standard," "Funk & Wagnall," and all the other dictionaries. It is the simple adjective of the plain Anglo Saxon word "will," which all men understand, and which is not dependent upon whether an act is excusable or not. It is "wilful" if done purposely and intentionally. On reference to 4 Words & Phrases, in the multitude of cases defining the word "willful" set out in pages 1293-1310, there is no such definition given to the word "wilful" as meaning "without cause to justify him in so doing," as was held in *S. v. Hopkins, supra,* as to any case of abandonment, and only three or four cases use it as to other matters, and then only by reason of additional words which do not appear in our abandonment statute.

With that exception all the cases collected in Words & Phrases, *supra,* from all the states define the word "wilful" just as it is defined in all dictionaries—as an act done "intentionally," "by design," "with set purpose," etc. They all hold that wilful means "intentionally and not

51—182

STATE *v.* FALKNER.

accidentally." And in some cases that it means "with deliberation or design, or knowingly," and "not negligently"; that it means "purposely."

The obiter expression in *S. v. Hopkins, supra,* imported into the word "wilful" as "being without cause," a meaning that it has never borne in the courts or in the dictionaries, or in common parlance. This is in effect judicial legislation amending the statute to mean what the Legislature did not intend for it to mean. It creates a presumption unknown in the decisions of any court in any other state or country elsewhere, that when a man is charged with wilful failure to discharge his duty to support his wife and children, which he owes under the laws of God and man, beyond a reasonable doubt his wife has been guilty of adultery or some other grievous offense that would justify him in leaving her— which is equivalent to turning the trial into an action of divorce for adultery, or any other ground, with the burden upon the wife and not upon the man. And that even in this case, though the defendant has admitted he has done the act which the statute makes a misdemeanor, the judge must tell the jury that they cannot find the defendant guilty unless the wife has proven beyond a reasonable doubt that she has not committed adultery or any other act that would justify him in leaving her and the children without support.

There are cases in which the statute uses other words in addition to the word "wilful," or sets up *provisos* which withdraw the case from the operation of the statute or makes an exception or a defense. In those cases it has been held that the burden of the defense is upon the defendant, but it need only be proven to the satisfaction of the jury, and not beyond a reasonable doubt, and that unless on the whole case the jury is satisfied beyond a reasonable doubt they should acquit.

Those precedents cannot in reason apply to this statute, which prescribes only two things to make the defendant guilty, and that is the wilful abandonment of his wife, without providing for her adequate support, and in this case both these facts were defiantly admitted by the defendant. There is no proviso nor exception nor defense in this statute.

As long as the marriage relation exists the burden is upon the defendant to support his wife. He cannot, without procuring a divorce, decide in his own behalf, without judge or jury, that he is entitled to a divorce and walk off without making any provision for the support of his wife and children, and then when charged with the abandonment, which he admits, coolly throw upon his wife the burden of proving beyond a reasonable doubt that if he had sued for a divorce he would have been entitled to it. This is cruel injustice to wife and children, the most defenseless persons who ask justice at the hands of a court. It cannot be supported in reason. It has no foundation in the statute and derives no authority from the definition of the word "wilful" in any dictionary or in the courts of any other state than this.

In reference to the offense of abandonment and nonsupport, the law is thus summed up in 21 Cyc., 1614: "The burden is on the State to prove every element of the offense; while the defendant bears the burden of proving his affirmative defenses. Any evidence which tends to prove or to disprove these matters is therefore admissible. The State must prove its case beyond a reasonable doubt; but an affirmative defense may be established by a preponderance of the evidence."

*S. v. Schweitzer,* 57 Conn., 543; *S. c.,* 6 L. R. A., 128, is a case exactly in point. The Court said: "The defendant is charged with having unlawfully neglected and refused to support his wife. There was evidence tending to prove marriage, and the refusal to support was not denied. The burden of proof to show the unlawfulness of the neglect was upon the State as fully as to show the neglect itself. Ordinarily the conduct of married women is such that when any husband neglects or refuses to support his wife the law itself presumes such neglect to be unlawful. Having shown the marriage and the neglect to support, the attorney for the State could safely rest upon the presumption. The unlawfulness was deemed to be true *prima facie.* And when the defendant interposed a defense based upon such misconduct of his wife as made it lawful for him to refuse to support her, it was incumbent upon him to prove such misconduct as he set up, that is, her adultery, and to prove it, as before stated, by preponderance of evidence."

In the same case the Court lays down the universal doctrine as follows: "All authorities agree that the burden is upon the State to make out its accusation in a criminal case beyond all reasonable doubt. It seems to be agreed with substantially the same unanimity that when a defendant desires to set up a distinct defense, such as is above mentioned, he must bring it to the attention of the court. In other words, he must prove it. A fact controverted before any tribunal can hardly be said to be proved at all unless there is more evidence in its support than there is against it—that is, the defense must be proven by preponderance of the evidence." The charge in this case did not err in favor of the prosecution. The defendant cannot complain.

The court charged as follows: "There must both be an abandonment of the wife without providing adequate support, and such abandonment and failure to so provide must both be wilful—and by wilful is meant without just cause or excuse—wrongful, and unjustifiable. In this case, among other evidence the defendant has offered evidence tending to show that the wife was unfaithful, and that she communicated an infectious disease to him, and there was evidence in contradiction. You are the sole judges of this, and of all the evidence in this case, and its credibility and what weight you will give it." The jury found that the defense of the misconduct of the wife was untrue.

It is true that in the Connecticut statute the word "unlawfully" is used, but that distinction is against the defendant in this case, for in *S. v. Massey,* 97 N. C., 465, it is said: "The term *unlawfully* implies that an act is done, or not done, as the law allows or requires, while the term *wilfully* is "done knowingly and of stubborn purpose." In this case the act of abandonment and leaving the wife without provision was admitted by the defendant to have been done knowingly and of his stubborn purpose.

The defendant contends, however, that such burden to excuse himself does not devolve upon the defendant, but that upon all the evidence, if the jury are in doubt about it the defendant should be found not guilty, and relies upon the instance of an *alibi,* citing *S. v. Josey,* 64 N. C., 56, but the court put that defense of an alibi entirely upon the ground that it is incumbent upon the State to prove the identity of the defendant, and if upon the whole case and considering the evidence for the defendant there is a reasonable doubt whether the defendant was the person who committed the crime or not, he should be found not guilty.

Here there is no doubt as to the identity of the defendant or of his having left his wife without adequate support, and there is nothing in the statute in the nature of an exception which the State must disprove. When the defendant relies upon the alleged misconduct of his wife, the burden is upon him to prove the truth of· the defense by reason of which he would take himself from under the statute. As the judge told the jury, it was not incumbent upon the defendant to prove such defense beyond a reasonable doubt, but merely to the satisfaction of the jury.

Where insanity is pleaded, the burden of proof is upon the defendant to establish such defense to the satisfaction of the jury. *S. v. Terry,* 173 N. C., 766; *S. v. Hancock,* 151 N. C., 699; *S. v. Brandon,* 53 N. C., 468; *S. v. Starling,* 51 N. C., 366.

The defendant also relies upon the proposition that on an indictment for "the slander of an innocent woman" the burden is upon the State to prove the innocence of the woman, but the gist of the indictment in that case rests upon the prosecutrix being a virtuous woman, and this must of course be proven as an essential ingredient of the offense.

If an indictment were allowable simply for the "slander of a woman," then the truth of the charge might be pleaded in defense, and even then the burden would be upon the defendant to prove this to the satisfaction of the jury, but the statute authorizing an indictment only for the slander of "an innocent woman" makes her innocence an essential element of the crime, and the State undertakes that burden in instituting the proceeding.

The lawmaking power has not thought proper to make it indictable to abandon an "innocent" wife without adequate support. It would be a

great hardship, unauthorized by statute, to require the State to prove that the wife was virtuous and free of fault, in every case where the husband has left her without adequate support. On the contrary, the offense guarded against by the statute is the abandonment by the husband, "wilfully," that is, "purposely," of his wife without adequate support for her and the children. Though the court has permitted him to exempt himself from the statute by showing that the wife has committed adultery, there is no such exception in the statute, and the court should permit him to avail himself of such defense only upon his alleging and proving it to the satisfaction of the jury. He cannot merely set up such defense and throw upon the State the burden of proving his wife is a virtuous woman.

The reasonable presumption is that if she is not virtuous he would avail himself of that fact by an action for divorce. It is for him to show any excuse for the intentional abandonment of his wife without adequate support.

To sustain the defendant's contention the court must necessarily hold it to be a *presumption of law* that when a wife has been abandoned by a husband, beyond a reasonable doubt she has been guilty of adultery, since it holds that the burden is upon the State to prove beyond a reasonable doubt that she is not guilty thereof. There is nothing in this statute which requires this to be proven. There is nothing in the statute which authorizes it.

The defendant relies upon *S. v. Hopkins,* 130 N. C., 647, in which case the learned judge was seeking to create the defense that if a wife has been guilty of adultery the husband should not be held liable for abandoning her. But in the absence of any such provision in the statute he endeavored in some way to annex this defense or excuse to the word "wilful," with which it had no connection. The statute attached "wilful" to the abandonment in contradistinction to instances in which the husband had separated himself from his wife otherwise than wilfully, as, for instance, where he might be incarcerated in an asylum for the insane. At most, if the proposition should be laid down that where the wife has been guilty of adultery it makes him excusable, the burden should be upon him to prove this as a defense. Even that cannot be sustained as to the children "which he may have gotten upon her," for the wife's misconduct will not justify his failure to provide support for them. *S. v. Kerby, supra.*

The rule as to the burden of proof to be deduced from the cases is this: "If the State's evidence, if true, shows a complete crime of purposely and wilfully abandoning without providing adequate support for her, then the burden is upon the defendant to show matters and facts

which will excuse his wilfully leaving his wife without adequate support as the law requires." *S. v. Wilbourne,* 87 N. C., 529, and *S. v. Connor,* 142 N. C., 700.

There is not only no requirement in the statute that the State must allege or prove the virtue of the wife, but there is not even a *proviso* withdrawing the husband from liability in case of the wife's misconduct. It is for the defendant to allege and prove it as a defense. When the State has shown, and here the defendant has admitted it, that his wife has been abandoned by him without support if he may withdraw himself from criminal liability therefor, he should show, if he can, that she has not been a virtuous woman since her marriage. This is a matter of defense, not a part of the offense, and the burden of proof is upon the defendant. This has been the uniform ruling of this Court, when there has been a *proviso* (and there is none here) which withdraws the defendant, upon a certain state of facts, from liability under the broad, general terms of the statute creating the offense. *S. v. Norman,* 13 N. C., 222; *S. v. Call,* 121 N. C., 649; *S. v. Welch,* 129 N. C., 580. A very similar case to this was *S. v. George,* 93 N. C., 570, "for abduction of a child," in which the Court held that the words of the proviso, "without the consent and against the will of the father," was not a part of the description of the offense, and must be proven by the defendant.

In an indictment for embezzlement, C. S., 4268, "not being an apprentice or other person under 16 years of age," must be charged, but the defendant must show that he is under 16, *S. v. Blackley,* 138 N. C., 622, and cases there cited. Under the former law, in prosecutions for retailing spirituous liquor, Rev., 3529, the bill must have charged that it was done "without license," but the burden was upon the defendant to show that he had license, *S. v. Emery,* 98 N. C., 668; *S. v. Smith,* 117 N. C., 809; *S. v. Holmes,* 120 N. C., 576, and a long line of authorities.

In an indictment for fornication and adultery, C. S., 4343, the bill must allege, "not being married to each other," but the burden is on the defendants to show that they are married as a matter of defense, *S. v. McDuffie,* 107 N. C., 888; *S. v. Peeples,* 108 N. C., 769; *S. v. Cutshall,* 109 N. C., 769.

In an indictment for entering upon land without license, C. S., 4305, though the bill must allege that the entry was "without license," the burden is on the defendant to prove license, *S. v. Glenn,* 118 N. C., 1194.

The statute under which the defendant is indicted does not require allegation or proof that the wife was a virtuous woman, nor is there any *proviso* withdrawing the husband from liability if the wife has committed adultery. It is solely a matter of excuse, which he must allege and prove, for there is no presumption of her guilt. In other states the courts hold that even when the statute, unlike ours, makes the chastity

of the woman a part of the description of the offense of abduction, there is a presumption in favor of female virtue, and hence, when the state has shown that the defendant has abducted or eloped with the wife of another man, the burden is on him to show that she was unchaste as a matter of defense. In the absence of proof, the courts elsewhere will not presume that a woman, who is shown to have been abducted, was unchaste. *Bradshaw v. People,* 153 Ill., 159; *Slocumb v. People,* 90 Ill., 281; *Griffin v. State,* 109 Tenn., 32; *People v. Brewer,* 27 N. C. Mich., 138; *Andre v. State,* 5 Iowa, 389; *S. v. Higdon,* 32 Iowa, 264.

The sole answer vouchsafed to all these settled precedents and principles is that the burden must be put upon the wife of proving beyond a reasonable doubt (before she can force her husband to support her and her children whom he admits he has left) that she has not been guilty of adultery or any other misconduct, because it is said in *S. v. Hopkins, supra,* that the word "wilful" meant not only what the statute said and the dictionaries hold, but it further means, in this particular matter, "without just cause," and, therefore, the burden is upon her to disprove that beyond all reasonable doubt.

When a precedent is so patently wrong and unjust to wives and children, and without warrant in any statute, or in any reason, it is creditable and proper to overrule it that it may no longer be a hindrance in executing the law and doing justice. It is true the Legislature has not interfered and told the Court that they had misconstrued the meaning of the word. That is a matter for the Court to correct, and it should do so now. The Legislature used the word "wilful" in the ordinary acceptation of the word, and as defined in all the dictionaries and in the decisions of all the courts, and there is nothing for the Legislature to amend. It used the word "wilful" and no other, and the Court should apply and use the settled meaning attached to that word. There is no proviso or defense which in the statute would withdraw the act of leaving the wife and children without support from the penalty provided by the statute.

There is no superstitious sanctity attaching to a precedent. It is proper that precedents should not be lightly changed or without sufficient cause. But they should not be adhered to when an opinion has clearly misconstrued a statute or is otherwise palpably erroneous.

This Court has never held that it was infallible, nor has any other Court. We have repeatedly overruled our own decisions, and a large pamphlet was issued some years ago containing a list of such cases, and a similar compilation now would be two or three times as large. The same is true of the U. S. Supreme Court, and all other courts. Men and nations may

> "Rise on stepping stones of their dead selves
> To higher things."

STATE *v.* FALKNER.

Courts can only maintain their authority by correcting their errors to accord with justice, and the advance and progress of each age. They should slough off that which is obsolete and correct whatever is erroneous or contrary to the enlightenment and sense of justice of the age, and to the spirit of new legislation.

While the courts are properly slow to change decisions unless justice requires it (as it so loudly does in this case), there are two classes of cases in which there should be close adherence to decisions:

1. When a decision has become a rule of property. In such case the correction should be left to legislation, which speaks prospectively.

2. As to matters of practice, which, being founded not on principle, but are more or less arbitrary rules. These should be left till there is a change either in the rules of the Court or by legislation. But this case does not involve a rule of property, nor is it merely a question of practice not involving a denial of justice or discrimination.

Even in such an important matter as *"Hoke v. Henderson,"* 15 N. C., 1, which was decided by one of the ablest courts we ever had, and which was affirmed no less than 62 times, it was properly and justly overruled by this Court in *Mial v. Ellington,* 134 N. C., 136, notwithstanding it had been held for law for more than 70 years. The Court felt itself strong enough, and under a duty, to correct that erroneous decision. The courts do not claim infallibility. This Court not infrequently overrules the court below, and in turn, on writs of error our decisions have been overruled by the U. S. Supreme Court. That Court has corrected its own errors to the extent that it has overruled a large number of its own decisions. Some years ago it held invalid a statute of the State of New York, which protected working men from working more than 10 hours per day in a temperature of more than 120 degrees. Since then that Court has advanced and has held valid the "Adamson Law," which protects working men in the open air from more than 8 hours labor a day. The Court advanced with the age. It has overruled many other important cases. And when it has not done so, the public have done so by constitutional amendments, notably, by the XI, the XVI, and other amendments.

In this State two of our most eminent judges held, in *S. v. Black,* 60 N. C., 262, and *S. v. Rhodes,* 61 N. C., 455, speaking for unanimous courts, that a husband had a right to thrash his wife, even without any provocation, with the restriction only that he could not permanently injure her. In less than ten years thereafter, in *S. v. Oliver,* 70 N. C., 60, while both those judges were still on the bench and counsel, as shown by his brief printed in the report of the case, relied upon those (then) recent decisions, *Judge Settle,* speaking for a unanimous Court, curtly said (with their approval), without deigning to argue the question: *"We have advanced from that barbarism."*

In *S. v. Edens,* 95 N. C., 696 (as late as 1886), the Court reverted to the former ruling that a husband was not liable for beating his wife "unless the battery is so great and excessive as to put life and limb in peril or permanent injury is inflicted," and for this reason deduced the ruling that where the husband in that case had married a young wife, who refused to live in the same house with his mistress, but left him and thereupon he circulated the vilest slanders against her, without any foundation in fact, and held that he was not liable under the statute which made it indictable to "attempt to wantonly and maliciously injure and destroy the reputation of an innocent and virtuous woman," on the ground that the slanderer was her husband, though this was an aggravation and not a defense. *This* barbarism was also overruled, *S. v. Fulton,* 149 N. C., 485.

In *S. v. Hopkins, supra,* the decision is even more barbarous, if possible, holding, without authority in any statute or in reason, and by a *dictum* originating in that case (which gave to the word "wilful" a meaning which it does not have in the dictionaries, or in any other Court) that a wife, asking for legal support, is presumed to be guilty of adultery or other misconduct, and that "beyond a reasonable doubt" she must prove that she is not. Surely it is time that we had advanced "from *that* barbarism" also, and should place ourselves in line with all the other courts, which hold that there is no presumption against the virtue of women, just as there is none against the honesty of men, and that he who asserts the contrary must prove it, and when it is set up as a defense it must be shown by the defendant and at least to the satisfaction of the jury.

No presumption that a wife has committed adultery, and that she must disprove this beyond a reasonable doubt, can arise merely because she asks that the courts make her husband give her and her children the support which the law requires him to give, and when he admits (as in this case), or is proven, to have left them without such support.